**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

ESTATE OF ALVIN COLE, et al.,

                Plaintiffs,            Case No.: 22-CV-856

      v.

JOSEPH ANTHONY MENSAH,

                Defendant.

---

**PLAINTIFFS' RESPONSES TO**
**DEFENDANT'S MOTIONS IN LIMINE (ECF NO. 45)**

---

Plaintiffs, the Estate of Alvin Cole, et al., by and through their attorneys, Cade Law Group LLC and Motley Legal Services, pursuant to the Court's Trial Scheduling Order, provides the following responses to Defendant Mensah's Motions in Limine (ECF No. 45) as follows:

**Defendant's Motion in Limine No. 1: To bar evidence or argument regarding any claim or against any defendant dismissed by the court via summary judgment**

    <u>**RESPONSE**</u>: <u>**Objection in part**</u>. No objection that the claims or arguments that have been dismissed should not be raised during trial.

    Plaintiffs object to the extent the motion seeks to bar Plaintiffs' expert from testifying on the "conduct/practices/policies of the City of Wauwatosa or the Wauwatosa Police Department." This is a peculiar request considering Defendant's expert also plans, according to his report, on testifying to "conduct/practices/policies of the City of Wauwatosa or the Wauwatosa Police Department." If Defendant's motion regarding

1

expert testimony does not come into evidence for Plaintiffs' expert, then it should likewise not come in for Defendant's expert.

Expert witnesses Ricky Buerms (Plaintiffs') and Michael Knetzger (Defendant's) provided reports that equally discuss the "issues concerning the conduct/practice/policies of the City of Wauwatosa or the Wauwatosa Police Department." The exclusion of Plaintiffs' expert triggers the exclusion of Defendant's. Plaintiff's position is that testimony from expert opinions related to policies and practices is critical to the issues at hand and should be permitted. To state otherwise strikes at the very heart of both experts' opinions. However, if this Court grants Defendant's motion, this Court must bar Defendant's expert from testifying to the same.

**Defendant's Motion in Limine No. 2: To bar evidence or argument concerning other police involved shootings, as well as evidence or argument about conduct, complaints or lawsuits in other incidents.**

**RESPONSE**: No objection, subject to Defendant's testimony. Plaintiffs do not object on the condition that if Defendant suggests that he has no other use of force incidents, or that the shooting of Alvin Cole was a "one-off instance," then Defendant has opened the door, and it would be fertile grounds for Plaintiffs to impeach Defendant with his prior use of force incidents. Defendant Mensah was deposed about other fatal shootings while this case was consolidated with the two other cases for which he was a defendant, and certainly it is proper to potentially impeach him with the prior inconsistent testimony, assuming it arises. This applies equally to any other officer suggesting their on-the-job use of force was minimal to none. Indeed, if Defendant or his witnesses intend to suggest that the shooting of Alvin Cole was a random occurrence, Plaintiffs intend to impeach to the same extent.

2

**Defendant's Motion in Limine No. 3: To bar evidence or argument that Cole's handgun was out of ammunition at the time he was shot.**

**RESPONSE**: **Objection in part**. Defendant seeks to bar evidence about whether there may or may not have been additional ammunition in the gun that Alvin Cole possessed at the time he was shot and killed by Defendant Mensah. When evaluating an excessive force claim, the objective standard requires a look solely to the information that the officer possessed at the time of the shooting, and not to additional information developed by hindsight. *See* Defendant's Motions in Limine, Dkt. 45, at 9 (Motion No. 3), citing *Common v. City of Chicago,* 661 F.3d 940, 943 (7th Cir. 2011); *see also Deering v. Reich*, 183 F.3d 645, 653 (7th Cir. 1999).

Plaintiffs will not introduce evidence that the the gun Alvin Cole possessed did not have a magazine or that the gun did not have any additional bullets in it. Obviously, Defendant Mensah did not know this at the time he exerted deadly force.

But the reverse also holds true. Plaintiffs object to the extent that this motion should apply and bar evidence of the extended magazine contained in Cole's fanny pack and to testimony that Mensah had concern for the safety of other persons besides himself. Defendant Mensah did not know that there was an extended magazine in the fanny pack, so it makes logical sense for purposes of this motion that no evidence should come in with regards to the extended magazine.

Moreover, since Mensah raised the issue about what was or was not known by he before he unjustifiably shot and killed Alvin Cole, he cannot adduce or introduce evidence that Mensah had any concern for any other person other than himself, including the Mayfair Mall security guard who was chasing Alvin Cole, as Mensah testified that he was not concerned about any other person's safety other than his own when he shot Cole.

3

*See, e.g.,* Dkt. 131, at 4; Dkt. 140 (Order on Mensah's motion to reconsider), at 5 ("Thus, [Mensah] acknowledges that, as he saw it, Cole did not pose a threat to anyone other than himself. Whether he had probable cause to use deadly force, therefore, depends on whether his testimony that Cole was pointing the gun at him is determined to be credible."); Dkt. 95-1, at 224:9-18.

And exclusion of such evidence as to the actual facts of what took place, not hindsight, etc., would exclude evidence of anything that happened in Mayfair Mall that was not specifically conveyed or known by Mensah, and any testimony by Davion Beard, Sarah Hopkins, or any other person as to their "belief" about what Alvin Cole was going to do with the gun, and all post-investigation findings. *See* Plaintiffs' Motion in Limine (Dkt. 39), at Numbers 14,15 and 16, which also should be granted.

**Defendant's Motion in Limine No. 4: To bar reference to violations of Police Department rules, policies, regulations, or general orders.**

**<u>RESPONSE</u>**: **<u>Objection in part</u>**. Defendant seeks to bar reference to violations of police department rules, policies, regulations, or general orders. *See* Defendant's Motions in Limine, Dkt. 45, at 10-12 (Motion No. 4). Defendant noted that he believes that based on Plaintiffs disclosures as well as arguments made throughout the litigation, that "Plaintiff [sic] will argue that Mensah, the chief, and other officers failed to act in accordance with policy procedures and protocols." Plaintiffs do not object to the introduction of evidence related to <u>violations</u> of police department rules, policies, regulations, or general orders. However, this motion should be denied in part and allow witnesses to testify to what police department rules, policies, regulations, or general orders a reasonable officer in Mensah's shoes would have been aware of at the time of the use of force. A limiting instruction can cure any purported prejudice.

If this Court bars Plaintiffs from introducing said evidence, Defendant, officer witnesses, and expert witness Knetzger also must be barred from any references that Mensah and officers **did not violate** any police department rules, polices, regulations, or general orders. Defendant's supplemental disclosures and his expert witness identify various Wauwatosa Police Department policies, training documents and/or operating procedures.[1] Therefore, if this motion is granted, Defendant and his witnesses must be barred from introducing evidence that Defendant did or did not violate any police department rules, polices, regulations, or general orders. Just as it is improper to use violations of those policies to establish a violation of constitutional rights, it is equally improper to use violations of those policies to establish that there was not a violation of constitutional rights.

Additionally, the Court should bar Defendant, officer witnesses, such as the chief and security officers, and Knetzger, from any references that Alvin Cole potentially violated any rules of Mayfair Mall, civil law, and/or criminal laws. Based on the history of litigation with this case and public statements made by Mensah as recent as February 6, 2025 to a State of Wisconsin legislative committee, it is anticipated that Mensah will testify that Alvin Cole was violating the rules of Mayfair Mall, had violated civil laws, and/or violated criminal laws, all of which was not specifically known to or conveyed to Mensah or other officer witnesses prior to Cole's death. Such evidence would be unfairly

---

[1] Including: Investigation of Law Enforcement Involved Fatalities #17-11, Emergency Vehicle Operations #18-01, Arrest Authority #17-15, Use of Force #16-12, Use of Force Policy 24-11, Wauwatosa Police Department Operating Procedure: In-Squad and Body Worn Digital Video Systems 18-1. *See* Exhibit B at Knetger Report.

Defendant and Knetzger also identify in the supplemental disclosures and expert report Wisconsin Law Enforcement Standards including: Defensive and Arrest Tactics (DAAT) and Firearms. *See* Exhibit A pg. 8 -9 at #5 and #6 (DF Initial Disclosures 6/23).

prejudicial and irrelevant. *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006) (prohibiting the use of the polices as evidence of a federal constitutional violation or as evidence of a state law violation); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir.2003) (holding that § 1983 "protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices"). At the time of Mensah's used of excessive force, all that was known was that it was a domestic disturbance call at Mayfair Mall for which mall security had called the Wauwatosa non-emergency line. Therefore, Plaintiffs' Motion in Limine (Dkt. 39), at Numbers 11, 14, and 15, should be granted.

Lastly, Defendant, officer witnesses, the chief, and Knetzger (expert) should be barred from testifying that Mensah and officers suffer from "inattentional blindness" that impacted their perceptions and recollections of the events. *See* ECF No. 46. Knetzger, who lacks expertise as a psychiatrist, psychologist, medical doctor, and human behavioral specialist, identifies articles that he has read and inappropriately attempts to opine in his report why the officers may have forgotten the events, the level of pain Alvin Cole was in, and talk about his various theories of, the weapon focus affect (at p. 39), inattentional blindness (*id.),* greater danger theory (at p. 37), and stress-induced analgesia (at p. 42). *See* Plaintiffs' Motion to Strike (ECF No. 43) and Plaintiffs' Motion to Limit Testimony and Opinions of Defendant Expert (ECF No. 46), which the Court also should grant.

Violations of civil law, criminal law, alleged Mayfair Mall rules, and Knetzger's amateur psychological theories as to Alvin Cole or Mensah do not rise to the level of a constitutional violation. *Kraushaar v. Flanigan*, 45 F.3d 1040 (7th Cir.1995). Therefore, what police department rules, policies, regulations, general orders, Mayfair Mall Rules,

civil law, and criminal laws that Mensah or any other witnesses believed or feared were not followed — should be excluded from testimony as it has no bearing on the ultimate jury issue, and risks confusing the jury by discussing things to which Mensah was unaware of the time. *See* Plaintiffs' Motion to Strike (Dkt. 43), Plaintiffs' Motion to Limit Testimony and Opinions of Defendant Expert (Dkt. 41), Plaintiffs' Motion in Limine (Dkt. 40), at Numbers 11, 14, and 15, also which also should be granted.

**Defendant's Motion in Limine No. 5: To bar argument, or innuendo that Officer Mensah's conduct was racially motivated, that the Wauwatosa Police Department promotes racism, and or generalized comments regarding social justice issues, race, or any similar general matter.**

**RESPONSE**: No objection.

**Defendant's Motion in Limine No. 6: To bar improper evidence, argument, or innuendo that "All Cops are Bastards" or "The Blue Line lies to protect the Blue Line."**

**RESPONSE**: No objection subject to the condition that Defendant be barred from improper evidence, argument, or innuendo that Plaintiffs are greedy or in the case only for money, are against the police, Blue Lives Matter, or that Plaintiffs are seeking revenge against Defendant or the Wauwatosa Police Department or its officers.

**Defendant's Motion in Limine No. 7: To bar evidence, argument or opinions regarding the mental health of Officer Mensah or of Alvin Cole, pursuant to F.R.E. 701.**

**RESPONSE**: No objection, so long as the same would apply to Defendant Mensah.

**Defendant's Motion in Limine No. 8: To permit defendant to cross-examine witnesses and to introduce evidence and testimony establishing Alvin Cole's character.**

7

**RESPONSE**: **Objection**. This Court should deny Defendant's request to cross-examine witnesses and to introduce evidence and testimony establishing Alvin Cole's character. This motion directly contradicts Mensah's other motions to preclude evidence of information learned after the use of excessive force. *See Defendant's Motion in Limine No. 3* (arguing that information not known to Mensah at the time Mensah used excessive force should be barred) and *Motion in Limine No. 13* (arguing that evidence/argument regarding post-shooting investigations and/or internal investigations into Mensah should be barred).

Plaintiffs first take issue with Defendant's Motion in Limine No. 8 because it clearly suggests that Defendant, or his attorneys, have Cole's juvenile records. In Wisconsin, juvenile records are confidential. Wis. Stat. § 938.78. Plaintiffs never received Alvin Cole's "criminal record" "through the course of discovery" from Defendant, nor have Plaintiffs provided the records to Defendant, either directly or through written permission. ECF No. 45, at p. 15. There is no record of Alvin Cole's juvenile adjudications through a search of Wisconsin Circuit Court Access (i.e. CCAP).[2] It is unclear to Plaintiffs how Defendant obtained these confidential records absent written permission, as no exception to obtaining them applies, even if they obtained from a police department or governmental agency. That begs the question of how did Defendant obtain these confidential juvenile records?

Wisconsin prohibits the Department of Corrections, and other agencies, from making available for inspection or disclosing the contents of any record kept or information received about an individual who was in its care or legal custody unless (i) an

---

[2] https://wcca.wicourts.gov/caseSearchResults.html

8

exception applies, (ii) the parent requests the record, or a juvenile above the age of 14 requests the record, or (iii) the parent gives written permission to disclose the records. Wis. Stat. § 938.78(1)-(2)(a), (ag), (am). Alvin Cole's parents did not request the records. Alvin Cole did not request the records. Alvin Cole's parents did not give written permission to disclose the records. Therefore, the only way for Defendant to have obtained the juvenile records is if an exemption applies. Wis. Stat. § 938.78(a).

The permitted disclosure exceptions are: (1) if a juvenile is missing and an agency has responsibility for placement of that child, (2) a juvenile escaped from a juvenile correctional facility and disclosure is necessary for the protection of the public, (3) for automated child welfare information, the department can transfer the records to the court, (4) the department can disclose to provide certain services, (5) disclosure of medical information for foster placements, (6) for permanency hearings, or (7) by order of the court. Wis. Stat. § 938.78(2)(a), citing Wis. Stats. §§ 938.78(2m), (3), s. 48.396 (3) (bm), (c)1r., s. 938.371, s. 938.38 (5)(b), (5)(d), (5m)(d), s. 938.396 (2m)(c)1r., s. 938.51, and s. 938.57(2m). None of those exceptions apply here. Again, that begs the question of how did Defendant improperly obtain these confidential juvenile records? On the grounds that Defendant improperly obtained these juvenile adjudication records requires this Court to prevent their admission.

Defendant's motion also incorrectly focuses on admitting testimony that the firearm was stolen. This Court should deny Defendant's motion to introduce testimony that the firearm was stolen because it is irrelevant. Defendant Mensah did not know at the time he shot Cole that the handgun was stolen. ECF No. 45, p. 9 (" What matters is what an officer knew before exercising force, not after," citing *Common v. City of Chicago*, 661

9

F.3d 940, 943 (7th Cir. 2011) ("A jury must stand in the shoes of the officer and judge the reasonableness of his actions based on the information he possessed in responding to that situation.")). Defendant admitted that no one knew the handgun was stolen. ECF No. 45, at p. 16 ("The _post-incident investigation_ in this matter revealed that the handgun" was stolen) (emphasis added). Ironically, Defendant has moved to bar post-incident investigations, which Plaintiffs agree should be granted. _See_ ECF 45, at Motion No. 13. Because Plaintiffs do not object to the motion to bar post-incident investigations, the fruits (i.e., the records obtained in the post-incident investigations, Alvin Cole's social media records, Alvin Cole's juvenile record, etc.) of every post-incident investigation should be barred from evidence.

I. **Evidence of "Alvin Cole's [sic] [juvenile adjudications]," and handling/use of firearms is not relevant to rebut neither the Parents' claim for loss of society and companionship nor the Parents testimony regarding the nature of their relationship with Alvin.**

Defendant alleges that Cole's juvenile adjudications are relevant to (i) rebut Tracy and Albert Cole's (the "Parents") claim for loss of society and companionship, (ii) rebut the Parents testimony on the quality of their relationship with Alvin, and (iii) rebut Plaintiff's argument regarding fleeing the police and resisting arrest. Defendant utterly fails to meet his burden in seeking to admit character evidence and juvenile adjudications. Defendant merely recites case law and does not apply it to the facts in this specific case. And the cases Defendant cites do not support admission of the evidence.

In _Cobige v. City of Chicago, Ill._, the Seventh Circuit found that the character evidence should have been included only because the mom's "character and life prospects were put in question _by her son's testimony_." 651 F.3d 780, 784 (7th Cir. 2011). Specifically, the son "testified that [the mom] had been a friend as well as a parent, a

bulwark of support and a role model throughout his life." *Id.*, at 784. The defendant in *Cobige* wanted to introduce "evidence that [the mom] was a drug addict who had been in trouble with the law for much of **her adult life** and had spent multi-year stretches in prison." *Id.* The Seventh Circuit found that the defendants should have been able to introduce evidence of **adult convictions** because it "would have allowed defense counsel to ask just what kind of "role model" she could have been." *Id.* The evidence was only admitted to "the extent that the son narrated it." *Id.*, at 785.

Here, Defendant does not seek admission of adult convictions. Defendant seeks admission of Alvin Cole's **juvenile adjudications**. Therefore, *Cobige* does not support admission. Defendant fails to make the proper showing that the evidence is relevant to undermine the parents' testimony as no testimony regarding their relationship with Alvin Cole has been given yet; for whatever reason, Defendant never chose to depose Alvin Cole's parents. Perhaps that was hubris in thinking Defendant would win summary judgment, or maybe it was trial strategy. Regardless, they did not avail themselves of an opportunity to ask specific questions of his parents to find out how they would testify about the loss of his companionship. Moreover, there are other ways than improper character evidence and juvenile adjudications to rebut the presumption of a "rosy" childhood. *See, e.g., Wrice v. Byrne*, 488 F. Supp. 3d 646, 665-666 (N.D. Ill. 2020).

Defendant next cites *Wofford v. Celani*, No. 11 C 3543, 2012 WL 2847549, at *2 (N.D. Ill. July 11, 2012). ECF No. 45, at p. 18. *Wofford* is not a case about the admissibility of evidence. *Wofford* analyzed "Plaintiff's motion to compel defendants to produce documents related to complaints by other citizens against the defendant." 2012 WL 2847549, *1. The court noted that although the information the plaintiff sought is

11

"potentially relevant," it did not conclude the evidence was admissible. *Id.* Therefore, that does not support admission of this evidence pertaining to Alvin Cole.

Finaly, Defendant cites *Lounds v. Torres* to support inclusion of character evidence, i.e., Alvin Cole's social media postings, handling firearms, and illicit drugs. In *Lounds*, the issue was whether evidence of a "history of domestic violence" was appropriately admitted. 217 Fed.Appx. 755, 758 (10th Cir. 2007) (unpublished). The 10th Circuit held that to admit evidence of other crimes or wrongs, a defendant must prove (i) "a proper purpose" (ii) "it [is] relevant", and (iii) "under Fed. R. Evid. 403 that the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice." *Id.* Again, the character evidence in *Lounds* was based off **an adult's** conduct, i.e., domestic violence, not juvenile delinquency adjudications.

Defendant does not have a proper purpose to introduce evidence of Alvin Cole's "social media history," including "media posts, photographs and messaging handling firearms and illicit drugs" should be admitted as character evidence. Again, there are other ways to rebut the presumption of a "rosy" childhood. *See, e.g., Wrice*, 488 F. Supp. 3d at 665-666. Defendant also does not show the evidence is relevant as Defendant does not proffer evidence that the Parents were aware of Alvin Cole's social media postings. The social media postings are irrelevant without knowing if the Parents were aware of them. Nor does Defendant show that the probative value of the juvenile convictions and testimony that the firearm was stolen is not substantially outweighed by the potential for unfair prejudice.

Even if the evidence is relevant to damages on the loss of society and companionship claim, relevant evidence may be excluded if its probative value is

12

substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Defendant offers no explanation for why these records are not required to be excluded under Rule 403. Thus, Defendant has not met his burden in seeking admission of the evidence.

The evidence would unfairly prejudice the Estate. Alvin Cole is not here and cannot get on the stand and defend himself or respond to Defendant's testimony regarding his purported troubled past. A reasonable officer would not have known about Alvin Cole's social media history, the fact that the gun was stolen, nor have information about his juvenile adjudications at the time Mensah used excessive force. Thus, introducing that evidence would confuse the issue and mislead the jury—which is exactly what Defendant wants to happen. A jury cannot unhear evidence, even with a limiting instruction. Therefore, evidence of Alvin Cole's social media, juvenile adjudications, and stolen handgun must be excluded as Defendant failed to make the proper showing.

## II. Evidence of "Alvin Cole's [sic] [juvenile adjudications]" is not relevant to rebut mischaracterizations of his conduct while alive.

Defendant's request to use Alvin Cole's "convictions" for impeachment is not supported by law and is borderline frivolous. ECF No. 45, p. 18. Defendant attempts to mislead this honorable Court by referring to Alvin Cole's **juvenile adjudications** as his "criminal history." Purposefully leaving out the fact that Defendant seeks to introduce juvenile adjudications is misleading.

Defendant blatantly ignores Federal Rule of Evidence 609, which clearly states that juvenile records <u>are not admissible</u> unless it is a criminal case. Fed. R. Evid.

609(d)(1). This Court should not admit Alvin Cole's juvenile delinquency adjudications as this is not a criminal case. *Id.*

In the only case Defendant cites in support of its theory to introduce Alvin's juvenile adjudications and social media posts, *Pryor v. Corrigan*, the district court actually granted in part and denied in part the plaintiff's motion to preclude the plaintiff's <u>adult felony convictions</u> from admission. No. 17-CV-1968, 2023 WL 1100436, *16 (N.D. Ill. Jan. 30, 2023), citing Fed. R. Evid. 609(a)(1)(A) (emphasis added). The district court actually prohibited the defendant in *Pryor* from introducing evidence that the defendant was a criminal, engaged in criminal activity, and was found to have cash in his possession. *Id.*

Therefore, this Court should bar Defendant from seeking to introduce evidence that Alvin Cole was a "criminal," engaged in criminal activity either the day of the shooting or via social media postings, had juvenile adjudications, posted on social media with guns, and was found to have had a stolen gun in his possession after being shot. *Pryor*, 2023 WL 1100436, *16.

Defendant also requests to use the evidence that Alvin Cole was in possession of a stolen gun to establish Alvin Cole's motive for fleeing. But it is not relevant as Alvin Cole's "motive" for fleeing is not a "fact [that] is of consequence in determining the action." Fed. R. Evid. 401(b). The elements the jury must find are (1) did Mensah use unreasonable force against Alvin Cole, and (2) did Mensah act under color of law? *See* Seventh Circuit Pattern Jury Instructions, Instruction No. 7.09 (Fourth Amendment: Excessive Force). Neither party must prove Alvin Cole's motive for fleeing. And Defendant Mensah was not aware of Alvin Cole's "motive," and certainly, no objective officer could have been aware of any motive, at the time he used excessive force against Alvin.

14

Because Alvin's purported "motive" is not a fact that is consequence in determining the action, this Court must exclude the evidence as irrelevant.

The only case Defendant cites in support of this theory, *United States v. Harris*, is not only a criminal case, but also has been overruled. 536 F.3d 798 (7th Cir. 2008), *overruled by United States v. Corner*, 598 F.3d 411 (7th Cir. 2010). There also are material differences that preclude this Court from relying on *Harris* to admit the evidence of the stolen gun. In *Harris*, it was a criminal case, and the test for admissibility of other acts in criminal cases is different. *Harris*, 536 F.3d at 807 ("Acts that are "intricately related to" (or "inextricably intertwined with") a crime charged in the indictment "are generally admissible ... and are not subject to the constraints of [Rule 404(b) ]." (internal citations omitted))(emphasis added). The *Harris* court found the testimony that Harris sold drugs was relevant to intent and motive because intent was at issue as Harris was charged with specific intent crimes. *Id.*, at 808. The *Harris* court further found that testimony that Harris needed a firearm to protect himself was relevant to prove motive to possess a firearm as Harris was charges with felon in possession of firearm. *Id.*, 803, 808

Here, Alvin Cole's "motive" of fleeing is not at issue. There is no element requiring either party to prove motive for fleeing. There is no element requiring either party to prove intent to flee. Thus, *Harris* is inapplicable. In fact, what Defendant Mensah "learned after" the alleged use of force was exerted <u>is not relevant and must be excluded</u>. *Pryor v. Corrigan*, 124 F.4th 475, 489 (7th Cir. 2024), citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). Mensah learned of the stolen gun *after* he

exerted deadly force on Alvin. ECF No. 45, at p. 16 ("The *post-incident investigation* in this matter revealed that the handgun" was stolen).

Finally, it is important to recall that Defendant seeks to exclude evidence or argument regarding post-shooting investigations or internal investigations. *See* Defendant's Motion No. 13, Dkt 45, at 21. Defendant seeks to apply a double standard. It is unclear why Mensah thinks any post-incident investigation regarding him should be precluded, but he has free reign to impugn Alvin Cole with information learned only after the fact.

Therefore, this Court must deny Defendant's Motion in Limine number 8 in its entirety and must inquire as to what records Defendant and his attorneys possess, and how they obtained said records.

**Defendant's Motion in Limine No. 9: To bar events advancing "Golden Rule" or "Reptile" arguments pursuant to Fed. R. Evid. 403**

**RESPONSE**: **Objection in part.** Plaintiffs do not object to barring statements akin to the "Golden Rule" – that is, prohibiting counsel from asking jurors to place themselves in Alvin Cole's shoes. Plaintiffs expect that this rule be equally applied to Defendant's counsel as well.

However, Plaintiffs object to the Defendant's attempt to bar statements under the "Reptile Theory" and ask this Court to deny it. Defendant's request is too vague for the Court to craft a meaningful decision on how to limit counsel from engaging in proper advocacy. Attorneys for both sides should be free to persuade the jury to view the evidence and draw inferences in favor to their respective clients. Defendant asks this Court for a broad, untethered order that could attach to any statement or question posed

16

throughout trial. Additionally, the failure to point to specific evidence to be excluded provides this Court with absolutely no context or ability to enforce it.

The motion to bar the purported "Reptile Theory" is one that, despite Defendant's avowals, is not well-favored. *See Falk v. Fleet Farm LLC, No.* 22-CV-535-WMC, 2023 WL 6538559, at *1 (W.D. Wis. Oct. 6, 2023) (denying motion in limine seeking to preclude any "reptile theory" arguments as "this court generally does not grant broad and ill-defined motions to preclude so-called 'reptile theory' arguments."); *Burress v. Mr. G & G Trucking, LLC*, No. 19-cv-791-jdp, 2021 WL 4472799, at *7 (W.D. Wis. Sept. 30, 2021) ("This motion will be granted only in part. Plaintiffs agree not to make Golden Rule arguments that ask the jurors to decide the case on the outcome they would want for themselves if they were a party. The motion is otherwise denied. The 'reptile theory' is ill-defined, and Defendants don't point to specific evidence or arguments they want the court to exclude."); *Furdge v. Wedig*, No. 20-cv-846-jdp, 2022 WL 782419, at *3 (W.D. Wis. Mar. 15, 2022) ("But the motion is denied as to the reptile theory. Such motions have become something of a fad among defense attorneys. **But the reptile theory, based on a simplistic notion of brain science, is so vaguely defined that the court would have no idea how to enforce a ruling to exclude it. The court will instruct the jury to decide the case based on the evidence, and that will have to be enough to keep the jurors' reptilian brains at bay**.")(emphasis added).

A similar disdain is evident in various other jurisdictions. *See, e.g., Hensley v. Methodist Healthcare Hosps.*, 2015 WL 5076982, at *4–5 (W.D. Tenn. Aug. 27, 2015) (denying "Reptile Theory" motion because "Defendants have again not identified the specific evidence that is sought to be excluded"); *Jackson v. Asplundh Constr. Corp.*,

2016 WL 5941937, at *1 (E.D. Mo. Oct. 13, 2016) (declining to issue ruling on motion based on the "reptile theory"); *Novotny v. Weatherford Int'l*, LLC, No. 1:16-CV-260, 2018 WL 4051596, at *4 (D. N.D. Mar. 14, 2018) (denying motion to exclude reptile trial strategies); *Cameron v. Werner Enterprises, Inc.*, 2016 WL 3030181, at *5 (S.D. Miss. May 25, 2016) (declining to issue ruling on motion based on reptilian theory because it was too "hypothetical"); *Bunch v. Pac. Cycle, Inc.*, 2015 WL 11622952, at *2 (N.D. Ga. Apr. 27, 2015) (rejecting reptile theory motion because it was "overbroad"), *Turner v. Salem*, 2016 WL 4083225, at *3 (W.D.N.C. July 29, 2016) (denying a motion based on the reptile theory).

It is painfully unclear what statements or arguments would fall within the scope of what Defendant seeks to exclude. Defendants have failed to provide any context to such a broad request. The issues of this case fundamentally concern reasonable standards for community safety and an officer's use of force when deploying lethal weapons. Trial tasks a diverse group of jurors to establish whether the parties' conduct was reasonable by utilizing their own real-world experiences and conventions. Their determinations have nothing to do with punishment, but rather what may be *objectionable* against a community standard. The reptile theory is a fleeting attempt for defense counsel to suggest that Plaintiffs will do something unethical or to illegitimately persuade a jury without any genuine evidence to support the claims at hand, without somehow committing the same misconduct. Trial lawyers are trained in the law and will abide by the Federal Rules of Evidence as is expected of the defense and as instructed by the Court.

For these reasons, the Court should not allow a broad sweeping order to limit counsel's strategic approach to the case and should deny the applicability of the reptile theory.

**Defendant's Motion in Limine No. 10: To bar evidence relating to the fact that Defendant may be covered by insurance and/or entitled to indemnification pursuant to Fed. R. Evid. 401-403, 411.**

<u>RESPONSE</u>: No objection, unless Defendant intends to somehow argue that he will have to pay any judgment out of pocket, as legally he is entitled to indemnification under State law.

**Defendant's Motion in Limine No. 11: To bar evidence related to attorneys' fees pursuant to 15 U.S.C. § 1692K(A)(3).**

<u>RESPONSE</u>: No objection.

**Defendant's Motion in Limine No. 12: To bar argument that Officer Mensah was "awarded" for shooting Alvin Cole.**

<u>RESPONSE</u>: No objection. Plaintiffs likewise included a similar argument in their Motions in Limine. *See* Plaintiffs' Motions in Limine No. 3 (Dkt. 39).

**Defendant's Motion in Limine No. 13: To bar evidence/argument regarding post shooting investigations and/or internal investigations into Officer Mensah.**

<u>RESPONSE</u>: No objection subject to Defendant Mensah's trial testimony. If Mensah or any of his witnesses open the door regarding post-shooting investigation, Plaintiffs intend to impeach to the same extent. Likewise, because Plaintiffs do not object to the motion to bar post-incident investigations, the fruits (i.e., records obtained from search warrants, Alvin Cole's social media records, Alvin Cole's juvenile record, etc.) of every post-incident investigation should be barred from evidence; thus, this is a further reason why Defendant's Motion in Limine No. 8 must be denied.

19

**Defendant's Motion in Limine No. 14: To preclude evidence, reference to, or argument or innuendo, or referring to the shooting as "murder," "homicide" or other criminal act.**

**RESPONSE**: **Plaintiffs object**. Defendant seeks to preclude the use of evidence or reference to the shooting of Alvin Cole as "Murder," "Homicide" or other criminal act. They cite to Fed. R. Civ. 401, 402, and 403 as well as then Milwaukee County District Attorney's decision not to charge Mensah to justify the exclusion of terms and evidence that may be used to presented to the jury. In addition, while making this request, Defendant fails to specify any particular testimony or evidence it wishes to preclude; and mentions that Plaintiffs have made publicly inflammatory statements. His position is that the words "homicide" and "murder" "can only serve to confuse the issues, mislead the jury, and unfairly prejudice Defendant." Dkt. 45 at 23.

"Relevant evidence is inherently prejudicial . . . Rule 403 was never intended to exclude relevant evidence simply because it is detrimental to one party's case; rather, the relevant inquiry is whether any *unfair prejudice* from the evidence substantially outweighs its probative value.' " *U.S. v. Lloyd,* 71 F.3d 1256, 1265 (7th Cir. 1995) (quoting *Cook v. Hoppin,* 783 F.2d 684, 689 (7th Cir. 1986)) (emphasis in original). The words "homicide" or "murder" are only prejudicial if they lead the jury to make a decision that is not based on the evidence. *Id.* Here in this case, the Court must determine if the use of the words whether in argument or in evidence presented has probative value. *U.S. v. Bogan*, 267 F.3d 614, 622 (7th Cir. 2001).

Indeed, the medical examiner will testify that Cole's death was a homicide. As this is a wrongful death action, evidence like the medical examiner's autopsy report, and her testimony are simply about the type of death, and does not call for a jury to impute

20

criminality upon the Defendant. Nor does the use of the word "homicide" ask the jury to make an emotional decision in a case during which they must determine if a police officer used excessive force. Homicide is the killing of a person by another; and there is no other way to properly define how Alvin Cole died.

Defendant's request to exclude specific evidence regarding the words "homicide" and murder is similar to that of *Lewis v. City of Chicago*, 04-C-3904, 2005 WL 8178978, *5 (N.D. Ill., June 27, 2005). The defendants sought to exclude the medical examiner's determination of the manner of death as a legal conclusion that would unfairly prejudice them *Id*. The court held that "[d]efendants will have the opportunity to cross-examine the medical examiner about the meaning of the term 'homicide. Certainly a jury is capable of understanding the term." *Id*.

Likewise, this Court should determine that the probative value of the evidence showing the manner of Alvin Cole's death is more probative than prejudicial in a wrongful death action wherein a jury is asked to decide if the force Anthony Mensah used was excessive. Defendant's motion should be denied.

**Defendant's Motion in Limine No. 15: To bar evidence or argument relating to the use of alternate force options or de-escalation strategies in response to Cole's actions**

      <u>**RESPONSE**</u>: <u>**Plaintiffs object to the extent that Mensah seeks to argue that he feared for the safety of others**</u>. Defendant seeks to bar evidence about alternative responses that Mensah could have utilized, including de-escalation techniques. *See* Defendant's Motions in Limine, Dkt. 45, at 23-25 (Motion No. 15), citing, for example *Plaskas v. Drinski*, 19 F.3d 1143, 1149 (7th Cir. 1994). Although Plaintiffs cannot argue that Mensah should have used an alternative or different level of force or should have

employed de-escalation techniques, the fallacy in Defendant's argument is the belief that Mensah had a right to use deadly force *at that moment* "when there is probable cause to believe that a suspect poses a threat of serious harm to the officer *or to others*." *See* Defendant's Motions in Limine, Dkt. 45, at 24, citing *Lopez v. Sheriff of Cool Cty.*, 2020 WL 1530739, *5 (N.D. Ill. 2020)(emphasis added).

As this Court noted in its March 29, 2024, summary judgment decision, further reiterated in the denial of Mensah's motion to reconsider on October 18 and Mensah admitted in his deposition, Mensah did not know about or have any concern for any other officer or person present when he confronted Alvin Cole. Dkt. 131, at 4; Dkt. 140, at 4-5; Dkt. 95-1, at 224:9-18. So while it is true that Plaintiffs cannot argue that Mensah should have used alternative force options, such as a taser, it also is true that Defendant (and especially his expert witness Knetzger) **cannot** argue that Mensah had a right to use deadly force against Cole to protect any other person other than Mensah.

**Defendant's Motion in Limine No. 16: Precluding Burems from rendering an opinion not disclosed in his report.**

<u>RESPONSE</u>: No objection. Ricky Burems previously disclosed a supplemental report and intends to testify to its contents. And the counterargument would be true with regards to Defendant's expert, Michael Knetzger, if he is allowed to testify – he cannot opine on anything not contained in his report or not barred through these motions in limine.

**Defendant's Motion in Limine No. 17: Precluding any witness from rendering opinions without laying proper foundation.**

<u>RESPONSE</u>: No objection. Plaintiffs expect the same to apply to any witness called by Defendant Mensah.

**Defendant's Motion in Limine No. 18: Precluding Plaintiff's Expert's report from being entered into evidence.**

**RESPONSE**: No objection. Plaintiffs expect the same to apply to the report of

Defendant's expert, Michael Knetzger.

Respectfully submitted this 17th day of February 2025

**CADE LAW GROUP LLC**

By: */s/ Madison Bedder*
Nathaniel Cade, Jr. SBN: 1028115
Annalisa Pusick SBN: 1116379
Madison Bedder SBN: 1121996
P.O. Box 170887
Milwaukee, WI 53217
(414) 255-3802 (phone)
(414) 255-3804 (fax)
nate@cade-law.com
annalisa@cade-law.com
madison@cade-law.com

**MOTLEY LEGAL SERVICES**

Kimberley Motley, SBN: 1047193
P.O. Box 1433
Matthews, North Carolina 28106
(704) 763-5413 (phone)
(704) 909-4100
kmotley@motleylegal.com

23