UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ESTATE OF ALVIN COLE, et al.,

                Plaintiffs,

v.                                                    Case No. 22-CV-856

JOSEPH ANTHONY MENSAH,

                Defendant.

---

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO LIMIT THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS (ECF 46)**

---

      Defendant Joseph A. Mensah, by his attorneys, WIRTH + BAYNARD, submits this response in opposition to the Plaintiffs' Amended Motion to Limit the Testimony and Opinions of Defendant's Expert, Michael Knetzger (ECF 46).

      The defendant disclosed Michael Knetzger, D.M., M.P.A. as an expert witness retained to provide testimony at the time of trial on Mensah's use of force, along with his expert report (ECF 42, Declaration, Exhibit A). The plaintiffs have moved to limit the testimony and opinions that defendants may elicit from Knetzger. It is unclear whether plaintiffs filed their motion as a *Daubert* motion – the standards for such a motion are contained within the plaintiffs' supporting brief – or a motion in limine pursuant to the court's scheduling order.[1]

      Under the framework established by Fed. R. Evid. 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469

---

[1] In ECF 43, Plaintiffs also have filed a Motion under FRCP 26(a)(2)(D)(ii) and 37(c) to strike Knetzger as a witness, notwithstanding the court's order permitting the Defendant to designate such an expert. (ECF 33, Consolidated Scheduling Order from Case No. 22-cv-0856). That motion was not filed as an expedited motion or a motion in limine, and a separate response to that motion will be filed within the time permitted by Local Rule and FRCP.

(1993), the court's review of motions to limit expert testimony begins with an analysis of the legal requirements of Rule 702, and decisions to admit or exclude expert testimony are subject to review for abuse of discretion. *Kunz v. DeFelice*, 538 F.3d 667, 675 (7th Cir. 2008), as corrected (Aug. 27, 2008).

The plaintiffs propound arguments to suppress three elements of Knetzger's report/opinion:

1. His opinions on the danger that Cole's conduct posed to others upon the consequent reasonableness of Mensah's evaluations, actions, observations, and decision-making;
2. The "reasonable officer" response expected from other officers; and
3. His opinions on the human-behavior factors in critical incident stress situations.

The plaintiffs' motion to suppress fails as a matter of law.

Not once in their motion do plaintiffs acknowledge that constitutional law requires the jury to consider the totality of the circumstances that led to the deadly encounter with Cole. The plaintiffs' motion focuses only on the moment that Mensah was forced to pull the trigger of his weapon, thereby improperly conflating *a* circumstance with the *totality* of the circumstances. Yes, the moment the trigger was pulled is examined by the jury, but it is examined within the totality of the circumstances that made deadly force reasonable. Knetzger's testimony will help show what made Cole's actions leading up to that moment so objectively deadly and how reasonable officers in the same circumstances are expected to respond.

**I. THE SHOOTING OF ALVIN COLE DID NOT OCCUR IN A VACUUM.**

In their motion to limit the testimony of Knetzger, the plaintiffs repeatedly argue that "the real issue at trial is whether Mensah could use deadly force to protect himself, not whether he was trying to protect others or if the other officers could use deadly force;" and the "central issue at trial is whether Mensah's use of deadly force in protecting only himself was objectively reasonable

2

in light of the circumstances that he was confronted with;" and "the jurors need to decide whether Mensah's deadly force was objectively reasonable in protecting his own life." (ECF 46, Plaintiff's Amended Brief, at pp. 3, 5 and 6). The plaintiffs' argument is fundamentally incomplete and therefore incorrect.

Mensah's focus at the moment he fired his weapon was the culmination of the many circumstances that led to that moment; the moment is not, as plaintiffs attempt to argue, to be considered by the jury in a vacuum. Mensah ultimately fired when Cole turned his handgun towards him; but everything that happened up to that point including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" is relevant to the jury's consideration of Mensah's ultimate use of deadly force. *Kisela v. Hughes*, 584 U.S. ——, 138 S.Ct. 1148, 1152, 200 L.Ed.2d 449 (2018), U.S. Const. Amend. 4.

In addition to Cole's objectively deadly threat at the instant Mensah fired, Mensah's conclusion that Cole's actions threatened deadly harm were absolutely informed by the circumstances leading up that moment – including his repeated evaluations that Cole's effort to escape through a shopping mall parking lot while armed with a gun put the public, mall security and the other officers in deadly peril. Having already fired his weapon once at his pursuers, Cole's danger to *any* person that got near him was inarguably a factor in Mensah's perception of Cole's deadliness towards him. It would be absurd to preclude evidence of the danger to himself and others that Mensah felt Cole presented as an active shooter fleeing through a mall parking lot. Mensah didn't pull the trigger in a vacuum – the entirety of the circumstances that led up to his conclusion that Cole's actions towards him posed an imminent, deadly threat are relevant, probative and admissible. Why was it reasonable for Mensah to conclude that Cole turning towards

3

him with a handgun was such an obviously deadly threat? Because of every incremental dangerous action undertaken by Cole up to that exact moment.

Accordingly, Knetzger's testimony on the totality of the circumstances the led up to and included Mensah firing his weapon - including everything Mensah learned up to that moment, Mensah's observations and evaluations at that moment, Cole's conduct during the chase and when the chase stopped, Mensah's evaluation of the dangers to himself and others posed by the circumstances, the law enforcement significance of an armed and fleeing suspect, and the observations and conduct of other responding officers - the accumulation of which the jury will use to evaluate how objectively dangerous the situation was that Mensah faced, is probative and permissible. Knetzger's opinions and testimony on those issues are proper, admissible, expert evidence.

## II. KNETZGER'S TESTIMONY ON THE RESPONSE OF A REASONABLE POLICE OFFICER IS RELEVANT AND ADMISSIBLE EVIDENCE.

The plaintiffs next ask that the court preclude opinion evidence from the defense expert on the expected and reasonable responses of the other responding officers. That evidence is credible and admissible evidence to assist the jury in the consideration of the "reasonable officer" standard.

There is no doubt that under Rules 702 and 704 an expert may testify about applicable professional standards and the defendants' performance in light of those standards. *Richman v. Sheahan*, 415 F. Supp. 2d 929, 945 (N.D. Ill. 2006).[2] The standard to be examined by the jury is the objective reasonableness of the force used under the circumstances by a reasonable officer

---

[2] Also, see *Becker v. City of Evansville*, No. 312CV00182TWPMPB, 2016 WL 6395868, at *5 (S.D. Ind. Oct. 28, 2016), for a reference list of other 7th Circuit cases in which expert testimony was permitted on the reasonableness of a police officer's use of force, to include *Jimenez v. City of Chicago*, 732 F.3d 710, 719–22 (7th Cir. 2013), *Abdullahi v. City of Madison*, 423 F.3d 763, 772 (7th Cir. 2005), *Calusinski v. Kruger*, 24 F.3d 931, 937 (7th Cir. 1994), and *Kladis v. Brezek*, 823 F.2d 1014, 1019 (7th Cir. 1987).

4

facing the same totality of circumstances. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2nd 443 (1989).

"In order for expert testimony to be admissible, it must satisfy the Federal Rule of Evidence's threshold requirement that 'specialized knowledge ... assist the trier of fact ... to determine a fact in issue.' Fed.R.Evid. 702. Once the threshold showing is made, experts may provide assistance on a very great deal: an opinion is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact.'" Fed.R.Evid. 704(a). *Florek v. Vill. of Mundelein, Ill.*, 649 F.3d 594, 602 (7th Cir. 2011). Knetzger's conclusions are contained in pages 36 through 44 of his report. (ECF 42, Declaration, Exhibit A).

As the *Florek* case noted: any "objective" test implies that there is a standard of conduct, and when the standard is specialized – in this case that of a "reasonable officer" – then Rule 702's line between "common and specialized knowledge has been crossed." *Id.,* citing, with favor, *Kopf v. Skyrm,* 993 F.2d 374, 378 (4th Cir.1993). Accordingly, expert testimony becomes not only relevant and probative but favored.

The conclusions in Knetzger's report express opinions on the conduct of Mensah and the responding officers as compared to the industry and agency standards applicable to a reasonable officer. They are exactly the relevant evidence that courts permit to be the subject matter of expert testimony in use of force cases. The plaintiffs' opposition to the opinions as impinging upon the role of the jury is misplaced.

Knetzger meticulously sources all of his opinions by referencing the evidence – written, testimonial, video and aural – that support his conclusions. This is not solely, as the plaintiffs contend, "a police shooting case where the jurors need to decide whether Mensah's deadly force was objectively reasonable in protecting his own life." (ECF 46, Brief at pg. 6). Properly instructed,

5

this is a case in which the jury must decide the objective reasonableness of Mensah's use of force against the standard of a reasonable officer under the same totality of circumstances. The standard of "a reasonable officer" is not a ready knowledge base for the average juror. The testimony of Knetzger will help the jury understand what is expected of a reasonable officer under the circumstances facing Mensah and his colleagues

The court will instruct the jury on the law. The evidence will show the jury what occurred. Knetzger will teach the jury what standards are expected of a reasonable officer. The jury will remain in charge of applying the law to the facts and have a resource to understand a specialized standard. Knetzger's opinions are admissible.

Moreover, if the plaintiffs challenge Knetzger's conclusions because they disagree with the facts upon which he relies, that is not a proper objection to the testimony – it is a subject for cross-examination. The "trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system" or to allow the district court to preempt the jury by evaluating the correctness of the facts on which the expert relied. *Richman v. Sheahan*, 415 F. Supp. 2d 929, 943 (N.D. Ill. 2006); s*ee Micro Chemical, Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1392 (Fed.Cir.2003); *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 249–50 (5th Cir.2002).

### III. KNETZGER MAY BASE OPINIONS ON LEAREND TREATISES OF A KIND ORDINARILY USED IN HIS FIELD OF EXPERTISE.

Plaintiffs' final request is to suppress the testimony of Knetzger on issues of human factors in critical incidents and crisis decision-making. Plaintiffs assert that Knetzger's acknowledgement that he is neither a psychologist nor a psychiatrist renders him unqualified to cite human factors variables in critical incident situations from learned treatises.

Knetzger achieved his Doctoral degree, a Doctorate of Management, in the field of Criminal Justice. He is an adjunct professor at two colleges teaching criminal justice coursework,

is a School Safety Consultant for the State of Wisconsin Department of Justice, and was a police officer, Sergeant and Lieutenant with the City of Green Bay Police Department.

One section of Knetzger's report discusses the research he performed on human factors in critical incident and crisis decision-making. Without any citation, plaintiffs label such studies "medical" evidence and declare that Knetzger "lacks the expertise to provide any information" on such issues. (ECF 46, Brief at pg. 7). Plaintiffs do not cite which expertise is required to cite, comment upon and apply such research.

Why does an expert with a doctoral degree in criminal justice studies lack the expertise to cite and rely upon learned treatises on human factors in police practice scenarios? Plaintiffs offer no answer. Knetzger lists his professional and educational experience to include specializing in training and educating criminal justice students, law enforcement officers, and law enforcement leaders in various topics, including leadership, management, professional communications skills, investigative techniques, computer forensics, use of force, and video recorded force incidents. He was a police officer for 29 years, has taught college for 24 years, and has testified as an expert witness within administrative and criminal courts about use-of-force.

Knetzger has also specifically applied his research into human factors throughout his professional and educational career. (02/17/25 Declaration of Michael Knetzger). The reliance upon the scientific principles has been embedded in elements of his work for more than two decades.

An expert witness can rely on hearsay provided that such reliance is accepted practice in his profession, as it is with Dr. Knetzger and the human factors research he describes. Fed.R.Evid. 703. *Tilstra v. BouMatic LLC*, 791 F.3d 749, 753 (7th Cir. 2015). Knetzger's report asserts that his research properly informs his opinions and explains certain elements of the police officers'

7

responses to the intense, crisis of the Cole incident. Plaintiffs do not offer any counter-evidence in opposition that the research cited, relied upon and applied by Knetzger concerning human factors is *not* of the type that is accepted practice in Knetzger's field.

"An expert witness is permitted to rely on any evidence, whether it would be admissible or inadmissible if offered by a lay witness, that experts in the witness's area of expertise customarily rely on. The evidence the expert relies on has to provide an adequate foundation for the expert's opinion, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Price v. Thurmer,* 637 F.3d 831, 837–38 (7th Cir.2011); *Ward v. Dixie National Life Ins. Co.,* 595 F.3d 164, 181–82 (4th Cir.2010) - **but that is all**." *United States v. Brownlee*, 744 F.3d 479, 481–82 (7th Cir. 2014)(emphasis added).

"It will not do to reply that jurors know from their daily lives that memory is fallible. The question that social science can address is *how* fallible . . . That jurors have beliefs about this does not make expert evidence irrelevant; to the contrary, it may make such evidence vital, for if jurors' beliefs are mistaken then they may reach incorrect conclusions." *United States v. Bartlett*, 567 F.3d 901, 906 (7th Cir. 2009)(emphasis original). Dr. Knetzger's opinion testimony on the influence of human factors in high stress and crisis situations will assist the jury in understanding the testimony of those present at the scene of Cole's shooting. The evidence is of a type ordinarily relied upon by Knetzger in his professional and educational career. The testimony should not be excluded.

## **CONCLUSION**

The testimony of defendant's expert witness on police science and use of force, Dr. Michael R. Knetzger, should not be limited. His research and opinions on the totality of the circumstances that culminated in the deadly confrontation between Alvin Cole and Joseph Mensah – as opposed to the sole moment at which Mensah fired his weapon – is consistent with the law on

use of force, is relevant, probative and admissible. Knetzger's testimony on the standard of a "reasonable officer" is admissible for the purpose of assisting the jury in its consideration of the specialized standard against which they will weigh the evidence. And Knetzger's research into, reliance upon, and application of human factors in high stress police encounters will help the jury understand an element of the witnesses' testimony and is of a type routinely relied upon by experts such as Knetzger.

For the reasons contained herein, the plaintiffs' motion to limit the testimony of Dr. Michael Knetzger must be denied in its entirety.

Dated at Wauwatosa, Wisconsin this 17th day of February 2025.

**WIRTH + BAYNARD**
Attorneys for Defendant, Joseph A Mensah

*/s/ electronically signed by Joseph M. Wirth*
Joseph M. Wirth, SBN 1012080
9898 W Bluemound Road, Suite 2
Wauwatosa, WI 53226
(414) 291-7979
Email: jmw@wbattys.com