# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ESTATE OF ALVIN COLE, et al.,

                Plaintiff,

v.                                              Case No. 22-CV-856

JOSEPH ANTHONY MENSAH,

                Defendant.

## DEFENDANT'S SUPPLEMENTAL MOTIONS *IN LIMINE* AND MEMORANDUM IN SUPPORT

As a supplement to Motions *in Limine* 1-18 submitted by Defendant on February 10, 2025 (ECF45), Defendant requests that the Court make the following evidentiary rulings prior to the September 8, 2025, re-trial:

**Defendant's Motion *in Limine* No. 19: To bar testimony from Tracy Cole and Albert Cole.**

On the third day of trial, Plaintiffs Albert and Tracy Cole voluntarily dismissed their individual claims of Loss of Society and Companionship against Defendant Joseph Mensah. (ECF 81) Plaintiffs' Attorney Cade clarified on the record that the dismissal was intended to be *with prejudice* and asked the court to accept the correction verbally. (Trails Trans Day 3 at 3:5-10) Prior to the dismissal of the Loss of Society and Companionship claim, Albert Cole testified about his relationship with his son generally and how his death impacted him and his family. (Trial Trans Day 1 at 3-9) After dismissal of the Loss of Society and Companionship, Plaintiffs sought to introduce testimony of Tracy Cole. Defendant objected on the basis that the testimony was no longer relevant. (Trial Trans Day 3 at 132-136) During a sidebar, the Court asked what Tracy Cole would testify about, and the response was that her testimony would be short and cover the fact that

Alvin Cole did not have any injuries (two skin scratches) when he left the house prior to being shot by Officer Mensah. (*Id* at 135:4-136:5) Plaintiffs' counsel then conceded that Tracy Cole would not testify. (*Id*. at 136:8-9)

Federal Rules of Evidence 401, 402, and 403 state that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. The Cole parents voluntarily dismissed their Loss of Society and Companionship claim with prejudice. (ECF 81; Trial Trans Day 3 at 3:5-10) As a result, the only claim remaining for resolution at re-trial is the excessive force claim against Joseph Mensah. Neither Cole parent was present at the incident involving Alvin Cole and Joseph Mensah, and neither can offer any eyewitness testimony that would make the circumstances of Alvin Cole's shooting more or less likely.

The cause of Alvin Cole's death is not in dispute. The impact of Cole's death on his family and/or the mental anguish of the Cole parents is not a recoverable element of damages in this lawsuit; thus, evidence of or testimony regarding such impact is not relevant and should be excluded. Moreover, as outlined in Defendant's Motion *in Limine* 8, testimony from the Cole parents regarding Alvin Cole's character would open the door for the defense to introduce rebuttal evidence. (ECF 45 at 15-19)

Accordingly, the court should preclude testimony from either Cole parent and/or any individual who does not have information relevant to a triable issue under Rule 401, and for the sake of judicial efficiency.

**Defendant's Motion *in Limine* No. 20**: Exclude comment, testimony, or argument that the number of shots Defendant Mensah fired constituted an unreasonable use of force and/or that the law required a renewed "deadly force analysis" before each trigger pull.

It is undisputed that Officer Mensah felt that Cole presented a lethal danger and that deadly force was necessary to neutralize the threat. Officer Mensah discharged a volley of five shots in rapid succession – the single volley of shots lasted less than 2 seconds. It is also undisputed that Cole was struck four times. However, there is no evidence that Officer Mensah continued to shoot after Cole was incapacitated or no longer posed a threat. That single volley of shots was the only time Officer Mensah fired his weapon. Nevertheless, during the first trial, Plaintiffs argued that Mensah was required to "re-assess" and develop a separate use-of-force justification for each shot that he took. But that is not the law.

To comply with the Fourth Amendment, the level of force used by police officers must be proportional to the threat. *See Becker v. Elfreich*, 821 F.3d 920, 928 (7th Cir. 2016). The Supreme Court's decision in *Plumhoff v. Rickard,* 572 U.S. 765, 777 (2014), held that an evaluation of deadly force is not dependent upon the number of shots fired during the immediacy of the moment. In *Plumhoff*, the Supreme Court evaluated the contrary argument from the claimant that, "even if the use of deadly force was permissible, [the Officer] acted unreasonably in firing a total of 15 shots." *Id*. at 777. The Court disagreed, explaining, "[i]t stands to reason that, if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Id*.

The *Plumhoff* decision squarely rejected the exact type of argument Plaintiffs seek to make in this case: that the number of shots shows excessive force. *See id*. Other courts have since followed suit. *See*, e.g., *Dasho v. City of Fed. Way*, No. C12-1398JLR, 2015 U.S. Dist. LEXIS 79556, 2015 WL 3796284, at *10 (W.D. Wash. June 17, 2015) ("[W]hen faced with a tense,

uncertain, rapidly evolving, and dangerous situation such as the one that existed here, an officer may reasonably fire a volley of shots at a threatening suspect, even if some of those shots are fired as the suspect falls to or lies on the ground."); A.*R.L. v. City of Fullerton*, No. 821CV00929FWSJDE, 2023 U.S. Dist. LEXIS 132640, 2023 WL 5659693, at *11 (C.D. Cal. July 31, 2023) ("To the extent Plaintiff argues the officers fired too many shots to incapacitate Decedent, the court notes this argument is foreclosed by Supreme Court and Ninth Circuit precedent."); *see*, e.g., *Esker v. Lutz*, No. 19-cv-00691, 2021 WL 3164254, at *6 (S.D. Ill. July 27, 2021) (granting defendant officer summary judgment where "all shots [were] fired in one quick volley" and "there [was] no evidence that the threat was neutralized" between the officer's second and third shots).

It is, of course, impossible for a reasonable officer Mensah's position to know instantaneously that Cole was unconscious and perform separate analyses between a volley of five shots occurring within less than two seconds. Ours is not a case in which there was a "clear break in the sequences of events." Cf. *Brockington v. Boykins*, 637 F.3d 503, 507 (4th Cir. 2011) (plaintiff stated plausible excessive-force claim based on officer having shot him multiple times after he had been incapacitated by the first shot, and where there was time for the officer to realize that plaintiff had already been subdued by the first shot). Mensah fired a single volley of shots. He did not pause, reload, or continue to fire after Cole ceased to pose a threat. *See Williams v. City of Sparks*, 112 F.4th 635 (9th Cir. 2024). Nor is this a situation where Mensah fired "forty-three times in multiple volleys," permitting "a jury could reasonably infer that [the plaintiff] became incapacitated and was therefore unable to pose a threat after having been shot with the first few bullets." Compare *Margeson v. White Cty.*, 579 F. App'x 466, 468 (6th Cir. 2014).

Instead, the evidence shows that Officer Mensah fired a lone volley of five shots in less than 2 seconds and stopped when he observed Cole drop to the ground. (Trial Tran Day 3 Mensah Testimony at 86) On-scene officers in the immediate vicinity testified that they saw Cole go prone only *after* being shot. (Day Two Trial Trans Olson Testimony at 56-58; Day One Trial Trans Shamsi Testimony at 42) Officers testified that Cole still had a gun in his hand when he was shot, and the gun remained in his hand after being shot until Officer Olson kicked it away. (Olson Trans at 56-58) Officers are entitled to reasonable leeway to permit them time to perceive that the threat level has diminished. *Alicea v. Thomas*, 815 F.3d 283, 288 (7th Cir. 2016)("If an officer's threat perception changes, so too should her force calculus."); compare *Abbott v. Sangamon Ctny*., 705 F.3d 706, 733 (7th Cir. 2013) ("To be sure, an officer will not be held liable if the circumstances under which the force that was used evolved so rapidly that a reasonable officer would not have had time to recalibrate the reasonable quantum of force").

Officer Mensah's decision to use deadly force against Cole is the operative evaluation for the jury; the Court should bar argument or testimony suggesting that the number of shots fired by Mensah was excessive or that he was required to articulate a separate justification before each trigger pull. Furthermore, Defendant's Motion *in Limine* No. 15, which was previously unopposed, similarly sought to preclude Plaintiffs from arguing that Officer Mensah should have used lesser force alternatives. (ECF 45 at 23) For similar reasons, the Court should preclude testimony, argument, or innuendo that Officer Mensah's five shots demonstrate his use of force was excessive, because permitting such argument is contrary to law, risks confusing the issues for the jury and unfairly prejudices Defendant Mensah.

**Defendant's Motion *in Limine* No. 21: To bar improper evidence, argument, or innuendo regarding Alvin Cole's alleged conscious pain and suffering.**

A decedent's estate may pursue a claim against a tortfeasor "for pain and suffering during the period intervening between the accident and death ...." *Schilling v. Chi., N. S. & M. R. Co.*, 245 Wis. 173, 177, 13 N.W.2d 594, 596 (1944). But if the decedent was not conscious during that interval, he necessarily did not experience any pain or suffering. *Klawes v. Firestone Tire & Rubber Co.*, 572 F. Supp. 116, 120 (E.D. Wis. 1983) ("A victim who is rendered unconscious and never regains consciousness cannot be awarded damages for pain and suffering.") (citing *Schulz v. General Casualty Co.*, 233 Wis. 118, 288 N.W. 803 (1939)); *Delvaux v. Langenberg*, 125 Wis. 2d 569, 371 N.W.2d 430, 1985 Wisc. App. LEXIS 3344 (Ct. App. 1985) (unpublished). Accordingly, to create an issue for a jury to decide as it relates to conscious pain and suffering, the Estate must show, as more than just a matter of speculation, that Cole was conscious and capable of suffering pain. Merely suggesting that officers attempted six minutes of CPR, as was done during questioning in the first trial, is not competent evidence of a claim of conscious pain and suffering.

The Seventh Circuit Pattern Civil Jury Instruction 7.26 Committee Comment (c) states:

> Speculation is not permissible basis to award damages: See *Henderson v. Sheahan*, 196 F.3d 839, 849 (7th Cir. 1999) ("Damages may not be awarded on the basis of mere conjecture or speculation; a plaintiff must prove that there is a reasonable certainty that the anticipated harm or condition will actually result in order to recover monetary compensation.").

No expert has been disclosed to testify about any claim of conscious pain and suffering. The Estate lacks any direct evidence that Cole was conscious following the shooting. No witness – medical or otherwise – testified to elements of consciousness or heard Cole speak after being shot. Officer Olson testified that he checked Cole's pulse, did not detect one, and started CPR with chest compressions. Officer Olson described that he did chest compressions/life-saving measures

6

for approximately 5 or 6 minutes before the ambulance arrived on scene. Officer Olson described Cole making sounds of agonal breathing, a medical term connoting brain stem activity associated with a loss of consciousness. Officer Olson testified that Cole did not respond to him. At some point, an AED indicated "no shock," meaning that Cole did not have a heartbeat. (Trial Day 2 Trans., Olson Testimony at 70-73) Alvin Cole died after being shot without ever regaining consciousness, and without consciousness, there can be damage claim for conscious pain and suffering.

Additional statements from officers and first responders suggest Cole was rendered unconscious after being shot. Per the MPD Investigative Case Report Officer Pentimalli stated that Cole appeared motionless and unconscious; Firefighter/paramedic James Barry reported that during his interaction with [Cole], he never observed him alert or speak; Firefighter/paramedic John Doornek reported that [Cole] was never conscious and not breathing; Firefighter/paramedic Campell said that Cole was never awake or talking during her interaction with him; and Firefighter/paramedic Brian Tello reported that Cole was never alert and never said anything.

Despite the lack of evidence, during the first trial, the special verdict form split the question of damages into one question for conscious pain and suffering, and a second question for loss of life. The defendants objected and will object again to splitting the Estate's single damage claim into separate questions in the upcoming trial's special verdict.

The verdict form used in the first trial permitted Plaintiffs to ask the jury to award $6 million as a separate demand for Cole's pre-death pain and suffering. The basis for that demand was the testimony of Officer Olson that CPR on Cole occurred for approximately 6 minutes. With a lack of any competent evidence of pain and suffering, the Estate should not have been permitted to pursue that damage category, and certainly not permitted to pursue it as a separate verdict

question. At the upcoming trial, there should be no claim, testimony or argument regarding the damage claim of "conscious pain and suffering."

Dated at Wauwatosa, Wisconsin, this 1st day of August 2025.

**WIRTH + BAYNARD**
Attorneys for Defendant

*/s/ Jasmyne M. Baynard*
Jasmyne M. Baynard, SBN 1099898
Joseph M. Wirth, SBN 1012080
9898 West Bluemound Road, Suite 2
Wauwatosa, WI 53226
(414) 291-7979
jmb@wbattys.com
jmw@wbattys.com