UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ESTATE OF ALVIN Cole, by and through its Special Administrator, Tracy Cole<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH ANTHONY MENSAH,<br><br>Defendants. | Case No: 22-cv-0856 |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
(Dkt. 132, 22-cv-856)**

NOW COMES Plaintiff, the Estate of Alvin Cole, by its attorneys, and for its brief in opposition to Defendant Joseph Mensah's Renewed Motion for Judgment as a Matter of Law (Dkt. 132, 22-cv-856), alleges and shows the Court as follows.

## INTRODUCTION

The defense is attempting to rewrite history and is asking this Court – for the third time – to dismiss this action despite acknowledging that there is a genuine factual dispute which necessitated trial in the first place. Dkt. 133 at 21-22, 22-cv-0856; Dkt. 82 at 21-cv-848, Dkt. 132.[1] And twice, the Court rejected Mensah's arguments, with its most recent decision stating:

> "I found that there was a material question of fact as to whether it was reasonable for Mensah to shoot Cole. This was so because there was a direct conflict between the testimony of Mensah and that of two of the other officers about whether Mensah's belief that he was in danger of death or serious bodily injury was reasonable. Mensah testified that his conduct was

---
[1] Several docket references are contained in Estate of Alvin Cole v. Joseph Mensah, Case No. 21-cv-848, unless otherwise noted.

reasonable because Cole pointed a gun at him. Officers Evan Olson and David Shamsi, however, contradicted Mensah's testimony. Mensah contends that I misconstrued Olson and Shamsi's testimony. But Mensah is mistaken on this point."

Dkt. 140, at 2.

The Defendant claims that "the court took the (Rule 50(a)) Motion under advisement and reserved ruling," however that is not what the record indicates. Dkt. 133 at 2, 22-cv-0856. Regarding the Rule 50(a) motion the record reflects the following without any indication that the motion was taken under advisement or reserved whatsoever:

> - 2:07 PM Judge resolves motions regarding jury instructions and Defense makes a Rule 50(A) Motion for Judgment as a Matter of Law

Dkt. 121 at 3, 22-cv-0856.[2]

Misrepresentations throughout Mensah's motion are numerous. The fact that two juries have not been able to reach a conclusion emphasizes that several factual disputes exist and require this Court to deny his motion. Holding any other conclusion would disturb the Court's prior rulings and usurp the role of a jury. Mensah's argument is rooted in factual inaccuracies which are impossible to locate in the record, defy this Court's prior rulings on motions in limine, and contain frivolous statements of both fact and law. Mensah's version of the truth is widely distorted and, while he may believe that this case is a clear winner, two juries have failed to reach the same conclusion. His motion must be denied.

## **LEGAL STANDARD**

---

[2] Plaintiff recalls that, after the September case was declared a mistrial and the jury was formally excused, that Attorney Baynard indicated her desire to file a post-trial brief. Attorney Nathaniel Cade objected by suggesting that any arguments that could be made were already denied. At this point, the Court noted it would not prohibit the defense from filing whatever brief he wished. However, at no point does Plaintiff recall the Court reserving a ruling on such an outcome determinative motion.

The standard for granting summary judgment "mirrors" the standard for judgment as a matter of law, such that "the inquiry under each is the same." *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 250-251, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); see also *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). While the standards are the same, one exception is that the two motions are made at different times during the proceedings before the district court. *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 578 (7th Cir. 2003) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

In *Lytle*, the Supreme Court explained that in entertaining a motion for judgment as a matter of law, **the court should review all of the evidence in the record**. In doing so, however, a court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-555, 110 S. Ct. 1331, 108 L. Ed. 2d 504 (1990); *Liberty Lobby, Inc v.* Anderson, 477 U.S. 242, 254, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, n. 6, 82 S. Ct. 1404, 8 L. Ed. 2d 777 (1962). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby, supra*, at 255. Thus, although the Court should review the record, including the evidence properly before it, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *Id*.

Accordingly, for present purposes the truth of Plaintiffs' well-supported material facts must be assumed. Then, the Court asks whether - on *those* facts - any of the

Defendants are entitled to judgment as a matter of law. *See, e.g., Weinmann v. McClone,* 787 F.3d 444, 449 (7th Cir. 2015) ("Our task is to determine, under [Plaintiff's] version of the facts, if [Mensah] was objectively reasonable in his belief that his life was in danger."); *see also Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) (must assume non-movant's facts in assessing summary judgment motion).

With two juries unable to reach unanimity, it is more obvious now than before that genuine issues of material fact require a jury conclusion.

## ARGUMENT

### I. Defendant fails to provide evidence in the record to demonstrate Alvin Cole was an imminent threat to Mensah

Through an improper reading of the factual evidence, Defendant begins his argument with a blatant misrepresentation and repeats statements that has no bearing in the record. Claiming that "Alvin Cole had a gun at Mayfair Mall," (Dkt. 133 at 4, 22-cv-0856; Dkt. 84 at 1); that he "got into an argument with another patron" (Dkt. 133 at 4, 22-cv-0856; 84 at 1); and that "Cole threatened the patron by showing the butt-end of a firearm," (Dkt. 133 at 4, 22-cv-0856; Dkt. 84 at 1) defies logic and the evidence.

Mensah attempts to shade the facts in his favor by suggesting that the "evidence demonstrates that Cole presented an imminent threat to Mensah *and everyone else in the parking lot."* Dkt. 133, at 4, 22-cv-0856 (emphasis added). This newfound theory that Cole was an imminent threat to anyone else other than Mensah is an incredible deviation from both sets of trial testimony and the universe of deposition testimony. Again, Mensah spends pages "summarizing" what he believes the facts should be rather than what the case truly demonstrates. Mensah cannot manufacture facts including whether Cole possessed the gun inside Mayfair Mall. Mensah likewise cannot cherry pick facts that suit

him, such as ignoring that the suspect was known to have a gold fanny pack while Cole styled a black one. Throughout the motion, Mensah inserts Cole into the picture when not a shred of evidence can definitively place him *anywhere* up until he is seen on squad footage, and even then, no one has the identities of any individuals running through the parking lot. Even with their version of the truth, Mensah could not prevail on summary judgment, his motion to reconsider, nor the two trials.

In further support, the Court in the final pretrial conference specifically forbade parties from discussing if Cole had the gun at the mall as argued by Attorney Cade because, "whether Alvin Cole had the gun in the mall himself, no one knows and no one can testify to that." Kimberley Cy. Motley Declaration, hereinafter "Motley Decl." at Exhibit 1, 24:22-23, 22-cv-0856. Additionally, there was no one on the witness list to testify that they saw (or thought) they saw the butt end of a gun at the mall. *Id* at 24:16:17; Dkt. 133 at 4, 22-cv-0856. Nor was there anyone on the witness list who saw Cole threatening a patron at the mall as falsely alleged. Dkt. 133 at 4, 22-cv-0856. Mensah's desperate attempts to mislead the Court in repeating factual inaccuracies are meant to do nothing more than to bolster Defendant's frivolous arguments that somehow there are no issues of material fact. It is obvious from these flagrant attempts that he remains nervous for a third trial.

As this court noted in its decision to Defendant's motion for reconsideration,

"In determining whether force is 'objectively reasonable' under the Fourth Amendment, only information known to the officer who used the force is considered. Sherrod v. Berry, 856 F.2d 802, 804 (7th Cir. 1988); Doornbos v. City of Chicago, 868 F.3d 572, 579 (7th Cir. 2017) ("In deciding excessive force claims, the issue is whether an officer's use of force was objectively reasonable given the information he or she knew at the time."). And the only information on which Mensah justifies his shooting Cole is that Cole was pointing a gun at him".

Dkt. 140 at 5.

This court further held that,

> "In the present case, Mensah testified that the reason he shot Cole was because Cole was pointing a gun at him. He testified that he did not see Cole point the gun at anyone else. Thus, he acknowledges that, as he saw it, Cole did not pose a threat to anyone other than himself. Whether he had probable cause to use deadly force, therefore, depends on whether his testimony that Cole was pointing the gun at him is determined to be credible. And, on this point, the testimony of Olson and Shamsi directly conflicts with Mensah's, **_presenting a factual question which only a jury can resolve_**".

*Id*. (emphasis added).

This is an excessive deadly force case where the video evidence boils down to how a jury visualizes what is occurring; only fact finders can determine credibility up against the evidence to locate an outcome. Defendants argue that Mensah shot Alvin Cole purportedly because Cole had a weapon allegedly pointed at him. Dkt. 133 at 8, 22-cv-0856. However, Plaintiffs correctly disputed Mensah's version of events, because there were multiple officers, as well as citizen witnesses, present on the scene and they have given **conflicting testimony** as to whether Cole possessed a weapon at the time he was shot and if he did, as to the direction he purportedly was aiming. Dkt. 94 at 19-20 (Table). As the Defendant is aware, the conflicting testimony of the officers was a deciding factor as to why this court denied summary judgement and its motion for reconsideration. Dkt. 133 at 5. The Court cannot renege on its prior rulings.

II. **Defendant's failure to complete the record is fatal to his arguments.**

Not surprisingly, Mensah relies on trial testimony in support of his motion. Yet, Mensah has failed to file any testimony into the record. Without the record being made whole and available (either through filing the transcripts or through a declaration), neither Plaintiff nor the Court can ascertain the truth of the statements being asserted by Mensah. For instance, nearly twelve (12) pages of Mensah's motion refers to trial testimony and/or

Defendant's interpretation of exhibits which are not a part of the record. Dkt. 6-16, 19, and 22, 22-cv-0856.[3] Mensah apparently expects this Court to assume what they believe that videos "unequivocally shows" and what they claim the testimony was. Dkt. 133 at 6, 22-cv-0856. Plaintiff would likely use the same transcripts to show the continued discrepancy among testimony. But, without **proof** that his reading of the transcripts is accurate, a ruling in his favor would be premature and improper.

Additionally, there are other misrepresentations in the brief, such as Defendant cites to "ECF 132 (22-cv-0856) Johnson Trial Testimony" when in fact ECF 132 (22-cv-0856) is the Defendant Motion for Judgment on the Pleadings. Dkt. 133 at 12, 22-cv-0856.

---

[3] Defendant provided this court with the following citations in the record most of which are notes in the record explicitly stating Plaintiff "do(es) not have access to the transcript." Defendant referred to the following cites purporting to be trial transcripts and/or exhibits both of which are incorrect. ECF 122, Plaintiffs' Trial Exhibit 3 at 00:08-00:11; 00:13 ,00:13 - 00:18, 00:13, and Beard Trans at 11:2-5. Dkt. 133 at 6. ECF 122, Plaintiffs' Trial Exhibit 3 at 00:19, 00:21, 00:23-00:25, 00:20-00:25, ECF 122, Defendant's Demonstrative Exhibit 1000, ECF 131 Mensah Trial Testimony at 89:1-13., 91:23-92:2, 94, and 55. *Id* at 7. ECF 131 Mensah Trial Testimony at 59, 94:6-25, 63:19-25, 74:1-9, 16-22, 96:7-19. *Id* at 8. ECF 131 Mensah Trial Testimony at 97:4-23, 76:11-77:22, 99:25-100:5, 93:10-94:3, 96:7-19, and Mensah First Trial Testimony at 48:4-7. *Id* at 9. ECF 131 Mensah Trial Testimony at 74:3-5, 96:3, 99:11-15, 100:19-21, 97:24-98:1; ECF 130 Shamsi Trial Testimony at 42:3-5, 9:21-23, 12-13, 19:24-20:4, 13-14, 14-15, and 22:23-25. *Id* at 10. ECF 130 Shamsi Trial Testimony 16, 47-48:24, 18:22-19:1, 30:4-9, 16:25-17:8, 43, 54:10-14, 31-32, 42:25-43:8, 31:4-11, 32:2-11, 34:1-12, 43:11-18, 54:15-18; ECF 126 Olson Trial Testimony at 5, 7:12-25, 10:14-16. *Id* at 11. ECF 126 Olson Trial Testimony at 13:10-15, 13:20-14:1, 14-15, 16, 45:25-46:2, 15:18-24, 13, 32-33, 45, 48, 21:4-11, 17:22-18:7, 27:21-22; ECF 132 Johnson Trial Testimony at 4:8-5:4, 23:9-20, 23:25-24:11, 26:5-11, 5:15-24, 24:12-25, 32-33, and 25. *Id* at 12. ECF 132 Johnson Trial Testimony at 25:13-24, 25:25-26:9, 28:17-22, 8:4-8, 11:18-21, 9, 26, 26:21-27:11, 29:22-30:4, 20:20-25, 30:5-15, 22:8-12, 18:23-19:4, 22:21-25, 14:20-15:14, 16:17-21, and 19:23-20:3; ECF 128 Beard Trial Testimony at 3:25-4:5, and 4:6-16. *Id* at 13. ECF 128 Beard Trial Testimony at 5:4-20, 6:17-24, 8:12-16, 9:21-23, 13:21-25, 13:24-14:1, 15:5-14, and 15:15-17; ECF 131 Tlomak Trial Testimony at 8-9, 19:23-20:4 and Trial Exhibit 34 at 1. *Id* at 14. ECF 131 Tlomak Trial Testimony at 21:16-21, 23:22-24:15, 11:10-19, 24:18-24, 35:9-17, 41:3-10, 32:9-33:16, 31:4-6, and Trial Exhibit 1040. *Id* at 15. ECF 131 Ricky Burems Trial Testimony at 111-112, 125:17-126:13, 111-17-21, 124:20-21, 121-122, 121:24-122:22, 126:9-13, 121:6-15, 127:2-14, 127:15-129:11, and 128; ECF 127 Michael Knetzger Trial Testimony at 5-6, 8:22-9:2, 12:8-12, 8:22-9:2, 14:21-24, 13:2-7, 10:3-14, 21:8-22, 12:13-13:15, 11:17-23, 13:8-12, 16:13-16, and 39:20-40:1; ECF Trial Exhibit 1055, Trial Exhibit 1055 at 74,77. *Id* at 15. *Id* at 16. Pltfs Opening Statement Transcript at 3:13-18. *Id* at 19. ECF 130 Shamsi Trial Testimony at 40:14-18, 41:2-3; ECF 126 Olson Trial Testimony at 18:25-19:1, 15:18-24. *Id* at 22.

Although officer testimony was inconsistent in varying points of the trial, there are supported citations in the record regarding what each officer claimed to have viewed at the time of the shooing.

Specifically:

| Witness | Observation of Cole shooting himself | Viewpoints Before Cole was Shot by Mensah |
|---|---|---|
| Joseph Mensah | Did not see a muzzle flash & did know where the shot came from. Dkt. 95-1 at 222:8-15 | Cole was pointing his gun directly at him and no other officers were next to him when he fired his weapon. Dkt. 95-7 at 40:11-13, 42:8-23, Dkt. 20 ¶ 143 |
| Jeffrey Johnson | Hears first shot, unsure where it came from. Dkt. 95-5 at 26:5-20, 28:2-8. | Observed Cole "falling or moving down" to "a hands-and-knees position" and was in the "act of falling." *Id* at 31:1-15, 34:10-17; Observed the "Gun is next to Cole". *Id* at 17:3-13, 18:4-19. |
| Evan Olson | Does not know where first shot came from, heard the shot. Dkt. 95-6 at 19:16-24 | Cole "extended his right arm from under his body and pointed a dark colored semiautomatic firearm in [his] direction." Dkt. 95-6 at 24:24-25:7. Cole pointing his gun "straight at him" and he did not see Cole point his gun at anyone else. *Id* at 51:24-52:9, 51:22-52:9. |
| David Shamsi | Only officer who had a visual of Cole and the Gun the entire time. Dkt. 95-7 at 40:11-13, 42:8-23.<br><br>Heard something that "sounded like a gunshot" no idea where it came from and did not observe a gun at the time., Dkt. 95-7 at 22:22-23:1, 22:22-24, 24:15-24. | Observed Cole face down on the ground and approached Cole's feet – when Cole was running and going down to the ground, Shamsi noticed for the first time that Cole had a gun in his hand. Dkt. 95-7 at 23:1-9.<br><br>Was giving verbal commands & never saw Cole move himself or the gun after he was on the ground & before shot by Mensah. *Id* at 31:11-23.<br><br>Did not report seeing Cole point his gun at anyone. Dkt. 95-1 at 222:8-15 |

Dkt. 94 at 19-20.

With assistance from the above chart, the Court agreed that there was a genuine issue of material fact due to the conflicting testimony and because "… a reasonable jury could also find that neither the Olson/Shamsi or the Mensah version of the facts accurately described what happened, or that some combination of them did." Dkt. 131 at 4-5.

The Court again addressed an identical argument in Mensah's motion for reconsideration. There, the Court noted both Olson and Shamsi "did not recall seeing Cole point the gun at Mensah" and that "the testimony of Olson and Shamsi directly conflicts with Mensah's, **_presenting a factual question which only a jury can resolve_**." Dkt. 140 at 3, 5 (emphasis added). Not to mention that "Shamsi's statement that everybody has their own perspective reinforces the proposition that an independent factfinder, a jury, is required to determine what happened." *Id* at 4.

Mensah's motion is not only riddled with inaccuracies, but the citation to trial testimony is not contained in the record for Plaintiff to accurately dispute. Dkt. 133 at 6-16, 19, and 22, 22-cv-0856. Instead, Plaintiff has relied on the prior pleadings in 22-cv-848 where the Court has expressly found genuine issues of material fact, compelling a jury trial. There is no question that a third jury trial is unprecedented, but fatigue has no place where issues of fact exist. This case must be tried again.

### III.    Defendant misinterprets the role of a jury.

Defendant again falsely suggests that Plaintiff is relying on a "moment of threat" doctrine rather than the totality of the circumstances. Dkt. 133 at 17,19, 22-cv-0856. Excessive force does not ask whether the pointing of a weapon is a prerequisite of using force; rather the proper analysis asks whether a reasonable officer would have used the

same level of force under the totality of the circumstances. Plaintiff's theory to a jury, as consistent to the court's ruling was that,

> "in determining whether force is "objectively reasonable" under the Fourth Amendment, only information known to the officer who used the force is considered. *Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988); *Doornbos v. City of Chicago*, 868 F.3d 572, 579 (7th Cir. 2017) ("In deciding excessive force claims, the issue is whether an officer's use of force was objectively reasonable given the information he or she knew at the time.").

Dkt. 140 at 5

Mensah does not get the hindsight 20/20 advantage of learning all the events prior to his arrival on scene or what he later learned was said via the radios. There is a great distinction between the two – Mensah's assumption of Cole's dangerousness cannot be derived off other officer's supposed fear through the case.

The Court went through great lengths to validate the arguments that Plaintiff made with regards to the totality of the circumstances and whether the use of force by Mensah was objectively reasonable as to his individual belief. Specifically, while "consideration of all circumstances surrounding Officer Mensah's use of force is necessary, the "only relevant" question for summary judgment is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure." Dkt. 134 at 4. This is not a new standard, nor one that the Court had previously got wrong. As the jury was expected to hear, the totality of the circumstances matters, but so too do the actions of Mensah as he deployed the use of deadly force. As argued,

> The Court reviewed the surrounding circumstances in detail and supported its view of the events by including: "several young people were involved in a disturbance at the" mall and that one of the persons were in possession of a gun. (Dkt. 131, at 2-3). Several officers responded, a group of the minors fled through the parking lot, and Officer Johnson pursued Cole on foot as Cole matched the description of the individual with a gun. (*Id*., at 3). There were multiple officers in different locations, and while fleeing, Cole shot himself in the arm, fell to the ground, and several officers converged on him. (*Id*.). Olson, who was to the west

of Cole, testified that moments before Mensah killed Cole, the right arm of Cole was extended and the gun was pointed west towards Olson. (*Id*.). Shamsi testified that moments before Mensah killed Cole, Cole's right arm, which held the gun, was pointed between Shamsi and Olson; that the gun never moved any time before or after Mensah shot Cole; and that Shamsi always had sight of the gun. (*Id*.). Mensah, who was to the northeast of Cole, testified that he shot Cole because Cole turned his body 270 degrees and pointed the gun only at him either over or under his left shoulder. (*Id*., at 3-4). Mensah testified that he shot Cole because he believed *his life* was in danger, not because other officer's lives were in danger. (*Id*., at 4).

Dkt. 134 at 5.

The level of detail from the Court in its two decisions rejecting Mensah's arguments indicates a full understanding of the scope of events leading to Cole's death, not a haphazard view of various statements, with respect to the totality of the circumstances. Mensah uses the recently decided Supreme Court case of *Barnes v. Felix,* 605 U.S. 73 (2025) in support of his argument that the moment of threat doctrine is improperly advanced here, but Plaintiff is not and has never, suggested its use. Instead, Plaintiff is merely pulling from Mensah's own sworn testimony that **he only feared for himself.** Dkt. 131 at 3-4. If Mensah wishes to miraculously change his testimony that he feared for Olson, Shamsi, or Betty Sue down the road, he may do so. But that also requires Plaintiff the ability to impeach Mensah on his inconsistent statements.

### A. This Court's rulings were consistent with the Supreme Court's ruling in *Barnes*

Without citation to the record, Mensah states, "that Plaintiff has argued that the only relevant event that determines Alvin Cole posed an imminent threat was the moment before Mensah pulled the trigger of his weapon." Dkt. 133 at 17, 22-cv-0856. This is incorrect.

The Plaintiffs have repeatedly argued "the mandate that a court must consider the totality of the circumstances leading up to the deadly force." Dkt. 134 at 12. The Plaintiffs further argued consistent with *Barnes*, that,

> To make such a determination as to the amount of force used, "The law requires an assessment of the totality of the facts and circumstances, which includes consideration of 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Estate of Smith, 410 F. Supp. 3d at 1071, quoting Strand v. Minchuk, 910 F.3d 909, 914-15 (7th Cir. 2018), cert. denied, 139 S. Ct. 1629, 203 L.Ed.2d 900 (2019); Muhammed v. City of Chicago, 316 F. 680, 683 (7th Cir. 2002)("Deadly force may be used if the officer has probable cause to believe that the armed suspect (1) 'poses a threat of serious physical harm, either to the officer or to others,' or (2) 'committed a crime involving the infliction or threatened infliction of serious physical harm' and is about to escape.") quoting Tennessee v. Garner, 471 U.S. 1, 11-12, 105. S. Ct. 1694, 85 L.Ed.2d (1985)."

Dkt. 94 at 11.

In making its arguments to the court, Plaintiff went through painstaking detail as to what an objectively reasonable officer would have known. Specifically, Plaintiff argued that a "reasonable officer" would have known that,

> (1) A report had been made of a number of African American teens at Mayfair Mall; (2) At least one of the teens was reported to have had a weapon (but not by any officer);[4] (3) Several teens were seen near the parking structure at the mall; (4) The male teens ran when police officers arrived; (5) Mensah, Shamsi, Johnson and Olson gave chase to the West; (6) Olson, at the time of the foot chase, parked his car on Mayfair Road and exited his vehicle; (7) Olson left his vehicle and proceeded through the parking lot, heading East; (8) Cole shot himself in his left forearm while he was running; (9) After the single gunshot, Cole fell forward and knocked himself unconscious; (10) Olson was to the West of Cole; (11) Shamsi was to he North (or behind) Cole; (12) Mensah was to the Northeast of Cole; (13) There is a dispute as to whether Cole, while he was on the ground, was a threat to any of the officers; (14) There is a dispute as to whether Cole raised the gun up and pointed it straight at Olson; (15) Mensah, who was not near any other officers, believed that Cole was able to do an acrobatic move and point the gun directly and only at him (while not moving and unconscious); (16) No officer

---

[4] Plaintiffs disputed the admissibility of the evidence regarding the statements of the person who reported Cole having a gun as the statements are inadmissible hearsay and do not fall into any hearsay exception.

testified or believed that any other officer (or the general public) was in danger at the time of the shooting; and, (17) as of November 8, 2008, it was clearly established that an officer may not use deadly force against a person who is suspected only of minor offenses and who does not pose a danger to the community.

Dkt. 94 at 18-19 (internal citations omitted).

The Court reiterated in its decision on the motion to reconsider "…that there was a material question of fact as to whether it was reasonable for Mensah to shoot Cole. This was so because there was a direct conflict between the testimony of Mensah and that of two of the other officers about whether Mensah's belief that he was in danger of death or serious bodily injury was reasonable." Dkt. 140 at 2.

In the Court's ruling it stated, that

> "In considering whether use of force was reasonable, I assess the totality of the facts and circumstances, including consideration of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Strand v. Minchuk, 910 F.3d 909, 914–15 (7th Cir. 2018)(quoting Graham, 490 U.S. at 396).

Dkt. 131 at 2-7

As the Defendant acknowledges, the *Barnes* court "reaffirmed the totality of the circumstances standard established in *Graham v. Connor*, requiring a comprehensive evaluation of all relevant factors—the events leading to the use of force, the severity of the crime prompting the police response, the actions of the officer and more importantly the subjects conduct because it indicates the nature level of the threat he poses, either to the officer or to others. Id. at 80 (citing *Graham*, 490 U. S., at 396)." Dkt. 133 at 19, 22-cv-0856.

It is obvious that the Defendant is grasping at straws by suggesting Plaintiff and the Court are utilizing a theory that has been rejected by the Supreme Court. Plaintiff has

13

Case 2:22-cv-00856-LA    Filed 10/30/25    Page 13 of 19    Document 135

relied on the testimony from the Defendant himself when arguing that the jury should consider the fact that he *only feared for his safety alone.* The jury in both cases were properly instructed as to the law under the Fourth Amendment and had to rely on the accounts of citizen witnesses, testimony of officers – including Mensah – to learn whether Mensah's force was excessive.

### B. The Court never ruled that pointing of a weapon was a prerequisite to an officer's use of deadly force.

This Court has acknowledged – twice – that "there is a genuine issue of material fact as to whether it was reasonable for Mensah to shoot Cole" Dkt. 131 at 5, 140 at 2. As outlined above, the totality of the circumstances was clearly relied upon – which Plaintiff has argued throughout. Mensah argues and Plaintiff agrees that, "mere possession of a firearm alone may not justify the use of deadly force, (and that) the case law in this circuit does not require the pointing of a firearm as a prerequisite to the use of deadly force." Dkt. 133 at 21, 22-cv-0856. As part of the totality of the circumstances analysis, in addition to the actions leading up to Cole being on the ground, the inquiry into whether Cole did in fact point his gun at Mensah, is part of the analysis for a jury to decide. Taken as a whole, Mensah arguments continue to be unpersuasive and there remains a genuine issue of material fact as to whether it was reasonable for Mensah to shoot Cole. Dkts. 131 at 5, 140 at 2.

### IV. Mensah is still not entitled to qualified immunity.

Again, Defendant essentially cut and paste arguments previously denied – twice – that Mensah is entitled to qualified immunity. Dkt. 133 at 19, 23-30; Dkt. 84 at 10-13, Dkt. 133 at 3.

14

Case 2:22-cv-00856-LA    Filed 10/30/25    Page 14 of 19    Document 135

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L.d.2d 565 (2009)(emphasis added). Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Pekrun*, 172 F. Supp. 3d at 1048 (citations omitted). Whether a defendant is entitled to qualified immunity turns on two questions: (1) whether the facts, taken in the light most favorable to plaintiffs, describe a violation of a constitutional right; and (2) whether the federal right at issue was clearly established at the time of the alleged violation. *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019).

This Court has already ruled that Mensah is not protected by qualitied immunity. Dkt. 131 at 5, 140 at 6. Mensah provides similar unpersuasive arguments as to why this Court should change its position on a legal argument that has been rejected twice.

As this Court ruled,

> a reasonable jury could conclude that Mensah lacked probable cause to believe that Cole posed an immediate threat to his safety, and thus, Mensah's use of deadly force violated Cole's Fourth Amendment rights. It is also clearly established—and has been since long before the shooting at issue here—that a person has a right not to be subjected to deadly force by an officer unless he puts the officer or another in imminent danger. *Williams v. Indiana State Police Dept.*, 797 F.3d 468, 484 (7th Cir. 2015); *Weinmann*, 787 F.3d at 448. Because a jury could find that Mensah did not have probable cause to believe that Cole had put him or others in imminent danger, I cannot presently grant Mensah's request for qualified immunity. *See Smith v. Finkley*, 10 F.4th 725 (7th Cir. 2021).

Dkt. 140 at 6.

### A. The Facts Show Mensah Violated Cole's Constitutional Rights to be Free from Excessive Deadly Force.

15

Case 2:22-cv-00856-LA    Filed 10/30/25    Page 15 of 19    Document 135

There is little doubt that shooting and killing a citizen is a use of force and subject to the reasonableness requirement of the Fourth Amendment. *California v. Hodari,* 499 U.S. 621, 625-26, 111 S. Ct. 1547, 113 L.Ed.2d 690 (1991); *Garner*, 471 U.S. at 9 ("Use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable . . . Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."). Mensah used excessive deadly force when he killed Cole, and such use was not reasonable. This finding of law is how the parties were able to reach a jury trial twice.

### B. The right was "clearly established" at the time of the alleged violation.

The question here is whether it was clearly established that an officer is not permitted to shoot a person who has not raised or pointed a gun at any officers. The answer is yes; it was clearly established. *Smith*, 410 F Supp. 3d at 1073, *citing Weinmann*, 787 F.3d at 449-50 ("if [decedent] had the gun raised to his shoulder and pointed at [defendant-officer], then [defendant-officer] would have been justified in using deadly force and hence entitled to qualified immunity"). *Cf. Rios,* 523 F. Supp. 3d at 1030 ("Under this well-established rule [as to the use of deadly force], it was clear on July 4, 2014, that a law enforcement officer may not reasonably shoot a suspect merely because he is fleeing from police, if the officer lacks any reason to believe that the suspect poses a threat to police or the public or has committed a crime of threatened or actual physical harm."), citing *Ellis*, 999 F.2d at 247 ("If [the plaintiff's] account is to be believed, [the officer] shot him in the back without any indication that *he had committed a violent felony or was dangerous*.")(emphasis added). *See also Garner*, 471 U.S. at 11 ("The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is

constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. . . but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect.").

Defendants, assert again that Mensah had a right to shoot Cole while he was on the ground. Mensah testified that he shot Cole out of fear for his own safety, not out of fear for the safety of any other officer, which is why Defendant improperly argues that Mensah's belief that the use of force to protect fellow officers was reasonable. Dkt. 131 at 3-4. Defendant can only try to argue that Mensah's belief that the use of force to protect himself was reasonable. And even that argument lacks any support and is heavily disputed by the material facts. Mensah's belief that the use of deadly excessive force was, in fact, unreasonable as Cole was not an imminent threat of serious injury or death to Mensah. *Cf. Bliss v. Chu*, 783 F. Supp. 2d 1058, 1065 (E.D. Wis. 2011)(Adelman, J.) ("Thus, as of August 14, 2006, *it was clearly established* that the Fourth Amendment prohibited Chu from shooting Bliss after the danger posed by his actions had passed.")(emphasis added), citing *Scott v. Edinburg*, 346 F.3d 752, 757 (7th Cir. 2003)("It is clearly established that "even '[w]hen an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity.'")(internal cites omitted).

Even if Cole had his hand on the weapon, he was not pointing it at any officer (rather, at best, the gun was pointed merely in a general direction), and *specifically the gun was never pointed at Mensah*, thereby denying the ability of Mensah to use deadly force. *Est. of Biegert by Biegert v. Molitor*, 968 F.3d 693, 700 (7th Cir. 2020) ("We

emphasize that someone does not pose "an immediate threat of serious harm" solely because he is armed. We made that point in *Weinmann v. McClone*, which involved an officer performing a wellness check on a man who had locked himself in the garage with a shotgun on his lap.").

Thus, whether or not Cole had actual possession of the weapon, was threatening if he did possess, and whether Mensah could use deadly excessive force are all disputed issues of material fact that should be decided by a reasonable and properly instructed jury. If a trier of fact could conclude that at the time that Mensah fired his weapon at Cole it would have been clear to a reasonable officer that Cole was not a threat to Mensah or any other officer, Mensah's decision to shoot Cole was not reasonable. Because a jury could find Mensah's actions unreasonable, it is impossible for this Court to find that, as a matter of law, Mensah properly exercised deadly force.

## CONCLUSION

Defendant's motion is a repeat of prior arguments and is out of frustration for the need to try the case again. It is understandable that, the energy expended for trial is immense. But the Court's steadfast rulings on both legal and factual issues was sound. For the aforementioned reasons stated herein, Plaintiffs request that this Court **DENY** the Defendants' motion for judgment as a matter of law, award costs, and to allow this matter to proceed again to trial.

Dated this October 30, 2025.

        **MOTLEY LEGAL SERVICES**

        By: *s/Kimberley Cy. Motley*
           Kimberley Cy. Motley, SBN 1047193
           PO Box 1433

Matthews, NC 28106
(704) 763-5413 (phone)
kmotley@motleylegal.com

**CADE LAW GROUP LLC**

Nathaniel Cade, Jr. SBN: 1028115
Annalisa Pusick SBN: 1116379
P.O. Box 170887
Milwaukee, WI 53217
(414) 255-3802 (phone)
(414) 255-3804 (fax)
nate@cade-law.com
annalisa@cade-law.com

Attorneys for Plaintiffs