UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ESTATE OF ALVIN COLE, et al.,

                        Plaintiffs,

v.                                                                                                  Case No. 22-CV-0856

JOSEPH MENSAH,

                        Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW**

---

Defendant Joseph Mensah submits this Reply Brief in Support of his FRCP Rule 50(b) Renewed Motion for Judgment as a Matter of Law. Plaintiff's response in opposition failed to address the essential legal question posed by Rule 50: whether the <u>trial</u> record, viewed most favorably to them, contains legally sufficient evidence upon which a reasonable jury could find in their favor. It does not. The evidence demonstrates – indeed, has twice demonstrated - that Mensah's use of force was objectively reasonable as a matter of law and was protected by qualified immunity. As a result, Plaintiff's case must be dismissed.

## LEGAL DISCUSSION

**I.    Plaintiff's Failure to Reference the Trial Record Constitutes Waiver of Opposition to Defendant's Rule 50(b) Motion.**

    **A.    Plaintiff Cannot Manufacture a "Missing Record" Argument to Avoid a Rule 50 Review.**

The Plaintiff inexplicably attempts to evade Rule 50 review of the trial evidence by claiming that the trial transcripts are "not contained in the record." See (ECF 135; Pl. Response at 9). The transcripts are plainly docketed as part of the record in this matter (ECFs 89-91, 126-131,

134). The defendant does not know why the Plaintiff failed to access the September 2025 trial transcripts, but that failure does not permit the Plaintiff to ignore the trial record and instead base its entire argument in opposition to Defendant's motion upon the judicial proceedings that occurred *before* trial began on September 8, 2025.

The Court has full access to the certified trial record, as does the Plaintiff – provided it paid the court reporters for the costs of the transcripts. Plaintiff has ordered transcripts in this case.[1] Plaintiff is, or should be, well aware of FRCP 28 U.S.C. 753 (f), which permits district courts to set a fair fee/cost, payable to the court reporters for the preparation and production of the transcripts. It appears that Plaintiff's argument is more properly, "the Estate didn't pay for the transcripts and has no idea what the trial record shows because it can't open them on the ECF system." That argument, based upon Plaintiff's own failure, is a far cry from "the trial testimony is not contained in the record."

Plaintiff appears to argue that Defendant was required to both pay for copies of the trial transcripts and supply those transcripts, for free, to the Plaintiff. There exists no legal support for such an argument, and Plaintiff cites none.

Rule 50(b) requires the Court to determine whether the evidence presented at trial was legally sufficient to support a verdict as a matter of law. Under Seventh Circuit law, for the Plaintiff to sufficiently oppose the Defendant's motion, it was required to cite both legal authority and specific supporting evidence. The Plaintiff is deemed to have waived its argument in opposition by its failure to cite trial-specific evidence. *Oplchenski v. Parfums Givenchy, Inc.*, No. 07 C 5715, 2009 U.S. Dist. LEXIS 13522, at *8 (N.D. Ill. Feb. 20, 2009). "A mere disagreement with the

---

[1] Again, Plaintiffs must be aware of its obligation to pay the reporters for transcripts. It did so to obtain the pre-trial transcript cited in Attorney Mottley's declaration in opposition. (ECF 136-1) For Plaintiffs to now argue that the Defendant was supposed to buy the Estate copies of the transcripts is, at best, disingenuous and, in truth, frivolous.

movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Plaintiff's procedural objection - premised on its own failure to access the record - is not a legitimate opposition to a Rule 50 motion for judgment as a matter of law. Plaintiff concedes that its arguments in opposition to Defendant's Rule 50 (b) rely upon the record as it existed prior to the September 2025 trial. (Pl. Response at 9, line 15). That concession mandates granting the Defendant's motion and dismissing this case.

### B. Plaintiff Misrepresents the Trial Record.

The Plaintiff's response opposing judgment does not cite the trial transcript a single time. Undeterred, though, the Plaintiff accuses defense counsel of misrepresenting the trial court record. It is, however, the Plaintiff who – apparently relying on nothing but the memory of their attorney – misrepresents the trial record.

Plaintiff first asserts that, following the conclusion of the evidence but prior to the matter being delivered to the jury for deliberations, the Court did not consider and reserve ruling on the Defendant's Rule 50(a) motion for judgment as a matter of law. That claim is apparently an undeveloped effort at a waiver argument. The basis for the Plaintiff's erroneous representation? Its attorney's argument that she does not recall the sequence. (Pl. Response at 2, fn. 2)

Obviously, had the Plaintiff reviewed the transcript it would know that the defense moved, pursuant to Rule 50(a), for dismissal "on the basis that the evidence in the case dictates that judgment as a matter of law should be awarded to the defendant finding that there is at minimum no evidence of excessive force but, secondarily, at worst, a case of qualified immunity." (ECF 128, at 23:8-19). Plaintiff's counsel argued in opposition, but the Court ruled, "I'm going to reserve decision on the motion, and we'll proceed to the jury (*id*. at 24:22-23)."

Plaintiff's failure to cite trial evidence or to identify specific facts in the trial record constitutes a failure to meet the required method by which a Rule 50(b) motion must be opposed. Plaintiff's sole reliance on pretrial rulings and/or the first mistrial cannot save its argument. Those proceedings established nothing more than that, at the time of the proceedings, factual disputes required a trial at which the evidence would be heard. Trial has now been completed; the evidence has been heard and become part of the record. After a full trial record, the question is now purely legal: whether the evidence could allow a reasonable jury to find for Plaintiff. It does not.

### C. Two Mistrials Do Not Create a Factual Dispute.

Plaintiff improperly conflates its inability to meet its burden of proof in two jury trials with questions of fact. The two mistrials show only the Estate's inability to prove its case; the trial record is complete, the facts are now of record, and the court can examine those facts under the prevailing standards for Rule 50 review.

Plaintiff's failure to cite the trial record highlights its misunderstanding of the important procedural difference between a judgment as a matter of law and summary judgment. Summary judgment relies on evidence developed before trial and its anticipatory potential at trial, whereas a motion for a directed verdict is based upon the evidence actually presented during the trial. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-152 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); see also *Tokh v. Water Tower Court Home Owners Association*, 327 Fed. Appx. 630 (7th Cir. 2009) (Rule 50 motion inapplicable at summary judgment because the rule presumes jury trial has begun and nonmoving party has finished presenting evidence). Moreover, although the standards for review are similar, a denial of a previous summary judgment motion does not preclude the court from entering a directed verdict under Rule 50. See *Miller v. Intaglio*, No. 87 C 6722, 1992 U.S. Dist. LEXIS 2951, at *4 (N.D. Ill. Mar. 12, 1992).

Plaintiff devotes most of its opposition to Defendant's Rule 50 (b) motion to a misplaced reliance upon pretrial rulings and submissions. (Pl. Response at 4-9, 13-15) Incredibly, Plaintiff argues that the two mistrials should persuade this Court that *its* failure to twice meet its burden of proof precludes the Court from viewing the evidence as insufficient. Such an argument fundamentally misconstrues the standard for granting Judgment as a Matter of Law.

The existence of two mistrials actually militates in favor of a determination that the Plaintiff's evidence is insufficient as a matter of law. A jury that cannot find in favor of the Plaintiff presents a procedural outcome, not an affirmative finding of fact or even a finding that a material question of fact exists. In a Rule 50 motion, the Court does not determine the mechanics of why jurors failed to agree, but whether the evidence presented and completed by the parties is legally sufficient to support a verdict for Plaintiff.

Plaintiff argues that two hung juries "emphasize that factual disputes exist" (Pl. Response at 2), but the opposite is true. Repeated mistrials after full evidentiary presentations indicate not the presence of unresolved facts, but the absence of proof sufficient to persuade a reasonable jury. Where, after multiple trials, the evidence still fails as a matter of law, judgment is appropriate.

The Court's role is to determine whether the alleged disputes are material, that is, whether they rest on evidence that could lead a reasonable jury to find a constitutional violation. Plaintiff has had no success in meeting that burden. Plaintiff's inability to secure a verdict after two full civil trials underscores that the evidentiary foundation of its claim is insufficient as a matter of law. Rule 50(b) exists for precisely this situation: where the evidence, even after repeated juror consideration, cannot support constitutional liability, the case must be dismissed.

## II. The Fourth Amendment Standard and Plaintiff's Burden.

The Fourth Amendment question in this case is whether a reasonable officer, under the same circumstances, could have believed that Alvin Cole's actions posed an imminent threat of death or serious physical injury to the officer or others. The burden of proof on that issue rests solely with the Plaintiff. Plaintiff attempts to deflect from its burden by suggesting that Officer Mensah is "obviously nervous for a third trial" and by arguing that the defense failed to prove he was a "clear winner." (ECF 135 at 2, 5) This argument misstates the law and ignores that the Estate, not Mensah, bears the burden of persuading a jury, a burden they have failed to meet twice.[2]

Plaintiff ignores the legal standard for dismissal and attempts to substitute arguments and references to pretrial submissions for the actual trial record. Its approach sidesteps the objective analysis required under *Graham v. Connor*, which mandates assessing the totality of the circumstances from the perspective of a reasonable officer on the scene. When measured against that standard, the undisputed facts establish that the force was objectively reasonable.

### A. The Trial Evidence Confirmed That Cole Posed an Imminent Threat.

Plaintiff identifies no trial evidence that could allow a reasonable jury to find a constitutional violation. Strikingly, Plaintiff's opposition does not even address the content of the squad video prepared and introduced by its own expert witness, a video that clearly corroborates Officer Mensah's account of Cole's movements and the position of the firearm at the moment of the shooting. Plaintiff's silence on this key evidentiary exhibit is telling.

Plaintiff's response relies exclusively on pretrial rulings, specifically, this Court's summary judgment and reconsideration orders, both of which predate the two trials and were

---

[2] As permitted by the court, Defense Counsel communicated with members of both juries, including the forepersons. Based on those discussions, it is evident that Plaintiffs would not have prevailed at trial, even under a non-unanimous verdict.

therefore based upon the *pretrial* record. As noted above, the question now before the Court under Rule 50(b) is whether the evidence presented <u>at trial</u> could permit a reasonable jury to find for Plaintiff. *Reeves*, 530 U.S. at 150; *Anderson*, 477 U.S. at 250–51. Plaintiff's failure to cite any trial testimony is a concession that the record contains no such evidence.

Even viewing the evidence in the light most favorable to Plaintiff—and disregarding any defense evidence that a jury was not required to believe, as *Anderson* dictates—the result is the same. Cole was armed, had already discharged his weapon, and was moving in a manner that Officers Mensah, Shamsi, and Olson reasonably perceived as posing an imminent deadly threat. Not a single witness at trial testified that Cole was stationary, that Cole followed police commands, that he dropped the gun, or that Mensah lacked reason to believe he faced immediate danger. The physical and video evidence plainly corroborate Mensah's account.

Plaintiff's citation to pretrial rulings ignores that those decisions found only that pretrial discovery showed the existence of a triable issue. The issues have now been tried. After two hung juries and a full evidentiary record, the Court may determine, as a matter of law, that Plaintiff has not met its burden of proof.

But even the pre-trial record relied on exclusively by Plaintiff shows that Cole possessed a firearm at Mayfair Mall, engaged in a dispute with another patron, and brandished the weapon during the disturbance. Multiple Wauwatosa officers, including Mensah, Olson, Shamsi, and Johnson, responded to Mayfair Mall because of the information they learned over the radio. The radio logs corroborate that broadcast (ECF 82, Trial 1 Pl. Ex. 49). The Court has already recognized this factual sequence:

> "On February 2, 2020, several young people were involved in a disturbance at the Mayfair Mall… One of the individuals, later identified as Alvin Cole, was reported to be in possession of a gun. A report of the disturbance was broadcast, and several Wauwatosa police officers responded to the call."

(ECF 131 at 2–3) Regardless of Plaintiff's preference that the court ignore Cole's illegal possession of a gun at Mayfair Mall, the Estate's suggestion that the Court precluded the admission of that circumstance is baseless. (ECF 97, Mar. 3, 2025, Hr'g Tr. at 40:23-41:25) During the first pre-trial conference, the Court ruled that the fact Cole had a gun in the mall was admissible:

> THE COURT: That comes in. And Cole had a gun in the mall, and that's why this whole thing started. That comes in.

(*Id*. at 41:23-25) At the second pretrial conference, the Court again permitted such testimony, clarifying only that witnesses should emphasize that Cole *had* a gun at the mall rather than that he *brought* the gun into the mall (ECF 111 pp. 25–27).

If it was not clear before trial, the evidence admitted at the two trials left no debate that Cole had a gun at Mayfair Mall; that he flashed the gun during a dispute with another patron; and that his actions prompted a police response:

- Officer Shamsi testified that dispatch reported "a subject… involved in an altercation that had flashed a gun," and that officers were "looking for that subject." (ECF 89 at 65:11–14; ECF 130 at 7:3–5.)

- Officer Johnson confirmed that Cole matched "the description… of the suspect inside of the mall that brandished a handgun." (ECF 134 at 26:8–11.)

- Officer Schleis testified that witnesses saw Cole "flash the rear end of a gun out of the fanny pack" and that he relayed that description to other officers. (ECF 89 at 130:2–8.)

- Officer Mensah likewise stated he responded because of "a call… someone with a gun." (ECF 91 at 72:3–7; ECF 131 at 44:7–10.)

When officers arrived on scene, Cole was commanded to stop; instead, he fled, removed the gun from its concealed location, and fired a shot. The video shows all the officers unholstering their guns based on their reasonable perception of an immediate, deadly threat. Officer Mensah testified that Cole turned toward him with the gun in hand, prompting a split-second decision to fire. Officer Mensah testified that, as he approached, he believed Cole might surrender, but the

8

situation changed in an instant. He explained that "walking up to him, I thought he would give up and surrender and give up and be the end of it," yet within "a fraction of a fraction of a second," he saw the gun pointed directly at him. (ECF 91 at 87:20–23, 86:4–15.) In that moment, Mensah perceived that Cole, who had already fired the weapon, was capable of discharging it again and posed an imminent threat. Mensah described beginning to move and fire "within that split second" to stop the threat. (*Id*).

Officers Shamsi and Olson testified that they, too, were preparing to fire when Mensah did. Officer Shamsi testified that he "was also preparing to shoot," was giving commands to de-escalate, and had his finger on the trigger and "depressed the slack out of the trigger." (Second Trial, ECF 130 at 40:21–41:3; *see e.g.* First Trial, ECF 89 at 69:2–6) Officer Olson likewise testified that he had decided to use deadly force and was prepared to shoot. (Second Trial, ECF 126 at 15:10–11; 15:25–16:1; *see e.g.* First Trial, ECF 90 at 54:23–55:3). While some witnesses had partial views, no testimony established that Cole was unarmed, complying with police commands, that firearm was stationary or that Cole posed no threat. Importantly, Cole still had the firearm in his hand when he was shot, confirming a continuing risk to the officers and public.

Trial evidence also showed that Cole's threat extended beyond the officers. Plaintiff's argument that Cole's danger to all those in the vicinity "deviates" from prior testimony (Pl. Response at 4) is incorrect. Mensah consistently testified—at his deposition and in both trials—that Cole's actions endangered everyone nearby. And although Plaintiff may have failed to review the transcripts from the second trial, it certainly had copies of Mensah's testimony from the first trial, where Mensah rejected the claim that Cole's actions only made him concerned for his own safety. See (ECF 91 Mensah First Trial Testimony at 48:4-7). During the second trial, when asked whether Cole threatened only him, Mensah responded:

9

> "No. Literally every single person who can be hit by a gunshot round in that area. People across the street could have been hit. Anyone in the mall could have been hit. Anyone in the Cheesecake Factory, driving around in the parking lot... If you're within a few hundred yards of this incident, you could have been shot." (ECF 131 Mensah Test. 99:25–100:5).

The squad video and forensic evidence validate Mensah's perception. Specifically, the video that was enhanced by Plaintiff's expert, Sean Kafer, shows Cole holding the firearm in his right hand (ECF 122, Ex. 3), and the coroner's diagram confirms front entry wounds consistent with Cole turning towards Mensah. (ECF 82 Ex. 34; 122 Ex. 34).

Under *Scott v. Harris*, 550 U.S. 372, 380 (2007), the Court may disregard a non-movant's version of events when video evidence "blatantly contradicts" it. Here, Plaintiff offered no evidence at trial that challenged what the squad camera videos show. Instead, Plaintiff offers only a passage from one of Mensah's pretrial depositions during which he was asked if he saw Cole point the gun at anyone else, and Mensah said he did not. (ECF 91 at 48-49; 131 at 78-80) At trial, Mensah made clear that his perception of the danger he faced was the product of the totality of the circumstances, not merely whether he saw Cole point the gun at anyone else in the moment before he fired. (ECF 91 at 86-87; 130 at 96-99)

Plaintiff's fixation on whether Mensah saw Cole point the gun at anyone else mischaracterizes both the evidence at trial and the legal standard for a finding of culpability. The Fourth Amendment does not require an officer to witness a suspect aim a firearm at multiple people before perceiving a deadly threat. Mensah's testimony makes clear even before he perceived Cole's gun being directed toward him, Mensah reasonably believed the weapon posed an immediate danger not only to himself, but to every person within range—including other officers and bystanders in the parking lot/vicinity.

Moreover, under a totality of circumstances analysis, even though Mensah had not personally witnessed Cole's conduct prior to Mensah's arrival, the police are entitled to rely on victim and witness reports of armed individuals. The broadcast description of Cole as armed provided sufficient probable cause for immediate response. The officers' actions were further vindicated by the physical and forensic evidence, including the recovered firearm (ECF 122, Ex. 1031), video showing muzzle flash (ECF 122, Ex. 1027a), and crime-lab analysis.

**B.      Plaintiff's Alleged "Factual Disputes" Are Irrelevant to the Objective Reasonableness Inquiry.**

Plaintiff attempts to manufacture a factual dispute by highlighting purported conflicts in testimony about the direction of Cole's weapon or whether it was pointed directly at officers when Mensah fired. *See* (Pl. Response at 17-18). Such discrepancies are immaterial to the Fourth Amendment inquiry, which focuses on whether a reasonable officer on the scene could have perceived an imminent threat—not on the precise angle or position of the firearm. *Ball v. Cortes*, No. 17-CV-434, 2018 U.S. Dist. LEXIS 25614, at *8–9 (E.D. Wis. Feb. 15, 2018) (granting summary judgment where disputes over the weapon's direction were immaterial to reasonableness under the Fourth Amendment).

When the trial testimony is viewed in its full context, it reinforces rather than undermines Mensah's account. Officer Shamsi—one of the closest witnesses—agreed upon review of the available video that Cole turned toward the direction from which Mensah was approaching. (ECF 130 at 54:15-18) Officer Olson similarly testified that, although he did not know Mensah's exact position before the shots were fired, he observed Cole turn toward the east—the same direction where Mensah was located. (ECF 90 at 22:21-23, 17:20-21) That testimony, taken together, confirms that Cole's movement was consistent with Mensah's perception that the gun was turning in his direction, validating the reasonableness of Mensah's split-second decision to fire.

11

During the second trial, Officer Shamsi testified that after reviewing the squad video, he saw Cole on his hands and knees and observed him crawling and then turning in Officer Mensah's direction as he approached. (ECF 130 at 54:10–18.) Although Shamsi stated that he did not personally see the gun move (*id*. at 33:22, 50), he expressly acknowledged that it was "possible" he simply missed any movement of the firearm. (*Id*. at 44) Thus, his testimony does not contradict Mensah's account that the gun shifted toward him; it merely reflects the limits of Shamsi's perspective and his acknowledgment that the gun could have moved even if he did not see it.

Plaintiff offers no discussion of trial evidence and instead falls back upon its summary judgment argument that "Mensah was not near any of the other officers, believed that Cole was able to do an acrobatic move and pointed the gun directly and only at him while not moving and unconscious." (Pl. Response at 12) No such evidence was adduced at trial (or before) to support that argument. The video shows that Mensah was near both Cole and Officer Shamsi at the time he fired, and the video shows Cole making a movement towards Mensah as he approached. There was no evidence at trial that even suggested that Cole was unconscious, nor did the plaintiff try to sell such an argument during the second trial. See generally (ECF 119, Trial 2 opening statement). Indeed, Plaintiff argued that Cole was conscious and asked the jury to award him $6,000,000 for a claim of <u>conscious</u> pain and suffering. (ECF 96 Trial 1 closing statement at 27)

Accordingly, Plaintiff's reliance on immaterial details about the direction of the weapon or witness perception cannot preclude judgment as a matter of law. Under controlling precedent, such minor variations do not create a genuine issue of material fact.

### III. Plaintiff Failed to Present Facts and Analogous Legal Authority To Overcome Mensah's Qualified Immunity.

Even if factual ambiguities existed regarding the precise movements or orientation of Cole at the moment of the shooting, such uncertainties do not preclude judgment as a matter of law.

12

Case 2:22-cv-00856-LA    Filed 11/10/25    Page 12 of 16    Document 137

Mensah's perceptions and actions – even if mistaken - were objectively reasonable under the circumstances, and qualified immunity therefore bars liability. The law clearly protects officers making split-second decisions in response to an armed and threatening individual.

Qualified immunity shields officials from liability unless existing precedent places the unconstitutionality of their conduct "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). At the time of the incident, it was not clearly established that an officer in Officer Mensah's position—confronted with an armed suspect who had fled from officers and fired a shot during the pursuit—was prohibited from using deadly force. Given the rapidly evolving circumstances and the potential threat posed by an armed suspect, Officer Mensah's actions fell within the zone of protection afforded by qualified immunity. But even assuming there were factual disputes, no clearly established law would have informed Officer Mensah that using deadly force was unconstitutional.

### A. Seventh Circuit and Supreme Court Precedent Support Immunity

The Seventh Circuit has consistently granted immunity to officers who used deadly force against armed or imminently threatening suspects. *Plakas v. Drinski*, 19 F.3d 1143, 1149–50 (7th Cir. 1994) (officer entitled to immunity after shooting armed suspect advancing with a weapon); *Williams v. Brooks*, 809 F.3d 936, 943–44 (7th Cir. 2016) (officer justified in shooting suspect who reached for gun during pursuit); *Estate of Escobedo v. Bender*, 600 F.3d 770, 782 (7th Cir. 2010) (upholding qualified immunity where suspect threatened officers with firearm); *Conley-Eaglebear v. Miller*, 2017 WL 7116973, at *2 (7th Cir. Sept. 26, 2017) (unpublished) (deadly force reasonable even before gun fully pointed at officer). And no case holds that an officer must wait until an armed suspect points a weapon directly at him before acting.

13

Case 2:22-cv-00856-LA   Filed 11/10/25   Page 13 of 16   Document 137

### B. Plaintiff Cannot Point to Particularized Caselaw Prohibiting Mensah's Actions.

In *Emmons*, the Supreme Court noted that it has "'stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment'" before ruling that an officer is not entitled to qualified immunity. *City of Escondido, Cal. v. Emmons*, 139 S.Ct. 500, 503, 202 L. Ed. 2d 455 (2019). Plaintiff has failed to produce such a case.

Plaintiff's Response does not even address the clearly established law supporting Defendant Mensah's entitlement to qualified immunity: *Pam v. City of Evansville*, No. 24-2286, 2025 U.S. App. LEXIS 25017 (7th Cir. Sep. 26, 2025). *See generally* (ECF 135 at 14-18). Instead, Plaintiff string cites a series of cases that are not factually analogous.

*Weinmann v. McClone* and *Biegert v. Molitor* each involved a suicidal individual who posed no immediate threat to others. In *Weinmann*, the decedent sat alone in his garage, armed but isolated, and officers made no claim of danger to the public before shooting him. The Court held it was unreasonable for the officer to shoot him. 787 F.3d 444, 447 (7th Cir. 2015).

In *Beigert*, officers responded to a 911 call from a mother who requested a welfare check because her son, who had a history of suicidal behavior, was alone and threatening to kill himself. 968 F.3d 693, 696 (7th Cir. 2020). Biegert was initially calm, but then became agitated, armed himself with a knife, and unfortunately, officers were not able to deploy deadly force before an officer was stabbed multiple times. (*Id*. at 700.)

*Rios v. City of Chicago*, 523 F. Supp. 3d 1020 (N.D. Ill. 2021) is a foreign district court decision that cannot be used to meet the clearly established prong. See *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995). Nevertheless, the *Rio* decision is inapplicable here. The *Rio* court denied summary judgment because Rio's Estate produced evidence contradicting the officer's account of the event, namely a video recording that showed the decedent's physical actions and

expert testimony that contradicted the bullet path. (523 F. Supp. 3d at 1029-30) By contrast, both video and eyewitness accounts in our case corroborate Mensah's perception of a threat.

Cole's conduct bears no resemblance to those cases. He was armed, had fled into a crowded parking lot, discharged his weapon, and turned toward officers a second time while holding the gun. The Seventh Circuit has repeatedly upheld qualified immunity in similar scenarios involving armed or imminently threatening suspects. See, e.g., *Plakas*, 19 F.3d at 1149–50; *Williams,* 809 at 943–44; *Escobedo*, 600 F.3d at 782; *Pam*, No. 24-2286, 2025 U.S. App. LEXIS 25017.

Under the *Saucier/Pearson* framework, the second prong, whether the right was clearly established, is similarly dispositive here. Plaintiff identifies no authority establishing that it is unconstitutional to use deadly force against an armed individual who was reported to have flashed a weapon in a mall at another shopper, who fled from police, who fired a weapon during his flight; who ignored commands, refused to disarm, and turned toward officers in a public area. To the contrary, precedent confirms that an officer need not wait until a weapon is fully aimed or fired before a deadly response is justified. See *Horton*, 883 F.3d at 952.

Because no clearly established law prohibited Mensah's actions, and because his conduct was objectively reasonable in light of the immediate danger presented, qualified immunity bars Plaintiff's claims as a matter of law.

## CONCLUSION

Plaintiff's opposition to Defendant's Rule 50n(b) motion seeks to relitigate issues already found insufficient to sustain a verdict and disregards the demanding standard of review. The trial evidence—viewed in the light most favorable to Plaintiff—cannot support a finding of excessive force.

Dated this 10th day of November 2025.

        **WIRTH + BAYNARD**
        Attorneys for Defendant

        */s/ Jasmyne M. Baynard*
        Jasmyne M. Baynard, WI Bar No. 1099898
        Joseph M. Wirth, WI Bar No. 1012080
        9898 W. Bluemound Road, Suite 2
        Wauwatosa, Wisconsin 53226
        T: (414) 291-7979
        Email: jmb@wbattys.com
        jmw@wbattys.com